**IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF RHODE ISLAND**

| | | |
|---|---|---|
| LYNN JONES, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No.: 1:07-cv-00190-ML-DLM |
| | ) | |
| DAVOL INC. and C.R. BARD, INC., | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

**DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION TO REMAND**

Defendants C.R. Bard, Inc. and Davol Inc. ("Defendants"), through counsel, submit this opposition to Plaintiff's Motion to Remand ("Motion") this case to the Superior Court of Rhode Island, Providence County. As provided for more fully in their accompanying memorandum of law, defendants state:

1. Admitted. Davol Inc. is a resident of Rhode Island for purposes of determining its citizenship for removal purposes.

2. Defendants do not allege that Davol was fraudulently joined to this action.

3. Denied. Defendants state that the plain language of 28 U.S.C. § 1441(b) permits removal when, as here, a forum defendant has not be properly joined *and* served. *See Thompson v. Novartis Pharmaceuticals Corp.*, No. 06-6280 (JBS), 2007 WL 1521138, at *4 (D.N.J. May 22, 2007) ("This language is unambiguous-removal is prohibited only where a defendant, who is a resident of the forum state, has been 'properly joined *and served.*'") (quoting 28 U.S.C. § 1441(b)); *City of Ann Arbor Employee's Retirement Sys. v. Gecht*, No. C-06-7453EMC, 2007 WL 760568 (N.D. Cal. March 9, 2007) (denying motion to remand where in-state defendant had

636868v1

been served at the time of removal); *Perez v. McNamee*, No.C-06-5031, 2006 U.S. Dist. LEXIS 89820 (N.D. Cal. Nov. 30, 2006) (removal proper before in-state defendant served); *Frick v. Novartis Pharms. Corp.*, No. 05-5429, 2006 WL 454360, *1 (D.N.J. Feb. 23, 2006) (same); *Massey v. Cassens & Sons, Inc.*, No. 05-CV-598-DRH, 2006 U.S. Dist. LEXIS 9675, at *10 (S.D. Ill. Feb. 16, 2006) (same).

4. Actual service is required in a removal context; Davol has not been served with the Complaint. Knowledge on the part of defendants' counsel is irrelevant in this context.

5. Prior filed cases and their procedural course are irrelevant as to the issues presented here. Actual service is required in a removal context; Davol has not been served with the Complaint.

For the foregoing reasons, plaintiff's Motion to Remand should be denied.

Date: June 7, 2007

Respectfully submitted,

/s/ Mark T. Nugent
Mark T. Nugent, #2637
Morrison Mahoney LLP
121 South Main Street, Suite 600
Providence, RI 02903
Tel: (401) 331-4660
Fax: (401) 351-4420
mnugent@morrisonmahoney.com

Of Counsel:

Joe G. Hollingsworth, *pro hac pending*
Kirby T. Griffis, *pro hac pending*
Dana Alan Gausepohl, *pro hac pending*
Spriggs & Hollingsworth
1350 I Street N.W.
Washington, DC 20005
(202) 898-5800
(202) 682-1639 (fax)

ATTORNEYS FOR DEFENDANTS
C.R. BARD, INC. AND DAVOL INC.

## CERTIFICATE OF SERVICE

I hereby certify that on June 7, 2007, a true and correct copy of the foregoing was electronically filed with the Court. This document is available for viewing and downloading from the Court's ECF system. Service of same has been made upon the following in the manner listed below:

Donald A. Migliori
Motley Rice
321 South Main Street
P.O. Box 6067
Providence, RI 02940-6067

*via electronic notice & first-class, postage prepaid, mail*

/s/ Mark T. Nugent
Mark T. Nugent

**IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF RHODE ISLAND**

| | | |
|---|---|---|
| LYNN JONES,<br><br>Plaintiff,<br><br>v.<br><br>DAVOL INC. and C.R. BARD, INC.,<br><br>Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | Civil Action No.: 1:07-cv-00190-ML-DLM |

**DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF THEIR OPPOSITION TO PLAINTIFF'S MOTION TO REMAND**

In her Motion to Remand, plaintiff admits that this Court has diversity jurisdiction by virtue of the complete diversity between the parties. *See* Motion at 2; Compl. ¶¶ 1-3 (Att. A); *see also* 28 U.S.C. § 1332(a). Accordingly, under 28 U.S.C. § 1441(a), this case was properly removable unless Congress has expressly provided otherwise – which it has not. Plaintiff argues: (1) because Davol is a Rhode Island citizen, the procedural limitation on the statutory right of removal set forth in 28 U.S.C. § 1441(b) precluded removal here or, alternatively, (2) Davol received "constructive service" of this suit through plaintiff's service of Bard. These arguments are unavailing. First, the limit on removability is triggered only where an in-state defendant has been "properly joined and *served*." *Id.* (emphasis added). Davol had not been served with the Complaint at the time of removal[1] and so the limitation on removal contained in § 1441(b) was not applicable by its plain terms. Second, under the removal rubric, service requires *actual* service and not "constructive service" – a term that does not appear in the nation's case law. Plaintiffs' motion to remand is meritless and should be denied.

[1] Davol still has not been served.

## Background

On May 17, 2007, plaintiff filed the Complaint in the Superior Court in Providence County, Rhode Island alleging, *inter alia*, that she suffered personal injuries caused by the implantation of the prescription medical device the Composix® Kugel® Patch. In addition to Davol, plaintiff also names C.R. Bard, Inc. in her Complaint. Plaintiff served process on Bard in the state-court action on May 22, 2007, but chose not to serve Davol. After becoming aware of this case, defendants, pursuant to § 1441(a), filed an Amended Notice of Removal in this Court on May 24, 2007, asserting federal jurisdiction. *See* Notice of Removal (Att. B). To date, Davol has not been served in this action.

## I. This Case Was Properly Removed Under 28 U.S.C. § 1441(a).

Cases are removable under 28 U.S.C. § 1441(a), where "the district courts of the United States have original jurisdiction," unless "otherwise *expressly provided* by Act of Congress" (emphasis added). Plaintiff concedes that this case falls within this Court's original diversity jurisdiction, as she must, since there is total diversity of citizenship between the parties. *See* Motion at 2; *cf.* Att. A at ¶¶ 1-3. The case is, therefore, removable absent an express statutory limitation. Plaintiff's candidate for that statutory limitation is 28 U.S.C. § 1441(b), which provides that diversity cases "shall be removable only if none of the parties in interest properly joined *and served* as defendants is a citizen of the State in which such action is brought." 28 U.S.C. § 1441(b) (emphasis added). Davol was not served when the case was removed, and so its citizenship must be ignored in determining the propriety of removal.

Far from being "an egregious slap in the face to the principles upon which the federal removal statutes are based," defendants' removal comports with a well-developed body of case law holding that removal by a defendant prior to service is appropriate and in accordance with

the plain meaning of the statutes. In construing § 1441(b), "courts have held, virtually uniformly, that where, as here, [complete] diversity does exist between the parties, an unserved resident defendant may be ignored in determining removability." *Stan Winston Creatures, Inc. v. Toys "R" Us, Inc.*, 314 F. Supp. 2d 177, 180 (S.D.N.Y 2003) (alteration in original) (quoting *Ott v. Consol. Freightways Corp.*, 213 F. Supp. 2d 662, 665 (S.D. Miss. 2002)).[2] Numerous courts have held that where an in-state defendant was not properly joined and served when it *filed its notice of removal, it was* entitled to removal under the plain language of the statute.[3] *See Thompson v. Novartis Pharmaceuticals Corp.*, No. 06-6280 (JBS), 2007 WL 1521138, at *4 (D.N.J. May 22, 2007) ("This language is unambiguous-removal is prohibited only where a

---

[2] *Cf. McCall v. Scott*, 239 F.3d 808, 813 n.2 (6th Cir. 2001) ("Where there is complete diversity of citizenship, . . . the inclusion of an *unserved* resident defendant in the action does not defeat removal under 28 U.S.C. § 1441(b)."); *Clawson v. FedEx Ground Package Sys., Inc.*, 451 F. Supp. 2d 731, 736 (D. Md. 2006) (same); *Test Drilling Serv., Co. v. Hanor Co.*, 322 F. Supp. 2d 953, 957 (C.D. Ill. 2003) ("the presence of an unserved Defendant who is a citizen of the forum state does not prevent removal when complete diversity exists"); *In re Bridgestone/Firestone, Inc.*, 184 F. Supp. 2d 826, 828 (S.D. Ind. 2002) (§ 1441(b) only precludes removal "if [in-state defendant] had been *properly served*" when removal petition filed) (emphasis in original); *Wensil v. E.I. Dupont de Nemours & Co.*, 792 F. Supp. 447, 448 (D.S.C. 1992) (where out-of-state defendants removed before service on in-state defendants, removal was proper under § 1441(b)); *Republic W. Ins. Co. v. Int'l Ins. Co.*, 765 F. Supp. 628, 629 (N.D. Cal. 1991) ("Because [defendant] had not yet been served at the time that [another defendant] filed its removal petition the language of § 1441(b) mandates the finding that this case was properly removed."); *Windac Corp. v. Clarke*, 530 F. Supp. 812, 814 (D. Neb. 1982) (recognizing that removal prior to service on in-state defendant is appropriate but finding that voluntary appearance by in-state defendant prior to notice of removal being filed with the state court was equivalent to service on in-state defendant).

[3] The First Circuit has consistently held that when the plain meaning of a statute is clear, there is no need look beyond that text to discern legislative intent. *See Palmieri v. Nynex Long Distance Co.*, 437 F.3d 111, 115 (1st Cir. 2006); *Bonilla v. Muebles J.J. Álvarez, Inc.,* 194 F.3d 275, 277 n. 2 (1st Cir.1999) (When "the plain meaning of the statute resolves the issue *sub judice,* we need not rummage through the legislative history or search for other interpretive aids."). Here, given the statute's clarity, this Court is compelled to deny plaintiff's motion. *See Arnold v. United Parcel Serv., Inc.,* 136 F.3d 854, 858 (1st Cir.1998) (when "the language of a statute 'is plain and admits of no more than one meaning ... the sole function of the courts is to enforce the statute according to its terms.'" (quoting *Caminetti v. United States,* 242 U.S. 470, 485, 37 S.Ct. 192, 61 L.Ed. 442 (1917)); *see also Pritzker v. Yari,* 42 F.3d 53, 67-68 (1st Cir.1994) ("we will not depart from, or otherwise embellish, the language of a statute absent either undeniable textual ambiguity or some other extraordinary consideration, such as the prospect of yielding a patently absurd result." (citations omitted). Accordingly, this compels the conclusion that removal was proper because Davol had not been joined *and* served at the time of removal.

defendant, who is a resident of the forum state, has been 'properly joined *and served*.'") (quoting 28 U.S.C. § 1441(b)) (Att. C); *City of Ann Arbor Employee's Retirement Sys. v. Gecht*, No. C-06-7453EMC, 2007 WL 760568 (N.D. Cal. March 9, 2007) (denying motion to remand where in-state defendant had been served at the time of removal) (Att. D); *Perez v. McNamee*, No.C-06-5031, 2006 U.S. Dist. LEXIS 89820 (N.D. Cal. Nov. 30, 2006) (removal proper before in-state defendant served) (Att. E); *Frick v. Novartis Pharms. Corp.*, No. 05-5429, 2006 WL 454360, *1 (D.N.J. Feb. 23, 2006) (same) (Att. F); *Massey v. Cassens & Sons, Inc.*, No. 05-CV-598-DRH, 2006 U.S. Dist. LEXIS 9675, at *10 (S.D. Ill. Feb. 16, 2006) (same) (Att. G).

## II. Actual Service On Davol Is Required Under Federal Law.

Plaintiff argues in the alternative that the Court should remand the case because Davol received "constructive service" of process. Plaintiff cites no legal authority in support of this proposition, and Davol's search reveals no instance of the phrase occurring in the context of service of legal process in all of federal jurisprudence. If knowledge and service were the same thing, then none of the cases cited above in which a defendant removed a case prior to their being served would have come out as it did, and the federal rules of civil procedure and federal removal statutes would have to be written differently than they are. *See Murphy Bros., Inc. v. Michetti Pipe Stringing, Inc.*, 526 U.S. 344, 347-48 (1999) (holding mere receipt of complaint absent *actual* service of summons to be meaningless in removal context); *id.* at 351 ("Unless a named defendant agrees to waive service, the summons continues to function as the *sine qua non* directing an individual or entity to participate in a civil action or forgo procedural or substantive rights."). Indeed, Congress' decision to insert the words "properly joined and served" into the statute in 1948 strongly supports giving them effect. The predecessor statute prohibited removal

of any case in which an in-state resident was named as a defendant, and these words were clearly intended to restrict the applicability of this exception to the statutory right of removal. *See Windac*, *Windac Corp. v. Clarke*, 530 F. Supp. 812, 813 (D. Neb. 1982) ("Under the predecessor of the present 1441(b) the residence of any defendant in the state where the case was sought to be removed was adequate to defeat removal.").

## CONCLUSION

For the foregoing reasons, plaintiff's Motion to Remand should be denied.

Date: June 7, 2007

Respectfully submitted,

/s/ Mark T. Nugent
Mark T. Nugent, #2637
Morrison Mahoney LLP
121 South Main Street, Suite 600
Providence, RI 02903
Tel: (401) 331-4660
Fax: (401) 351-4420
mnugent@morrisonmahoney.com

Of Counsel:

Joe G. Hollingsworth, *pro hac pending*
Kirby T. Griffis, *pro hac pending*
Dana Alan Gausepohl, *pro hac pending*
Spriggs & Hollingsworth
1350 I Street N.W.
Washington, DC 20005
(202) 898-5800
(202) 682-1639 (fax)

ATTORNEYS FOR DEFENDANTS
C.R. BARD, INC. AND DAVOL INC.

**CERTIFICATE OF SERVICE**

I hereby certify that on June 7, 2007, a true and correct copy of the foregoing was electronically filed with the Court. This document is available for viewing and downloading from the Court's ECF system. Service of same has been made upon the following in the manner listed below:

Donald A. Migliori
Motley Rice
321 South Main Street
P.O. Box 6067
Providence, RI 02940-6067

*via electronic notice & first-class, postage prepaid, mail*

/s/ Mark T. Nugent
Mark T. Nugent

# A

STATE OF RHODE ISLAND
PROVIDENCE, SC

SUPERIOR COURT

LYNN JONES
Plaintiff
vs.

DAVOL INC. and C. R. BARD INC.
Defendants.

Civil Action No: PC-07-2534

## COMPLAINT

### Parties

1. Plaintiff, LYNN JONES ("Ms. JONES") is a citizen and resident of the County of Wake, State of North Carolina.

2. Defendant, DAVOL INC. ("DAVOL") is a corporation that is incorporated under the laws of the State of Rhode Island. DAVOL has its principal place of business in the State of Rhode Island. It manufactures the Composix® Kugel Mesh Patches ("Kugel Patch") at 100 Sockanosset Crossroad, Cranston, Rhode Island. DAVOL has a registered agent in Rhode Island at CT Corporation System, 10 Weybosset St., Providence, Rhode Island. DAVOL focuses its business on products in key surgical specialties, including hernia repair, hemostasis, orthopedics, and laparoscopy.

3. Defendant, C. R. BARD INC. ("BARD") is a corporation that is incorporated under the laws of the State of New Jersey. It is the corporate parent/stockholder of DAVOL and



2007 MAY 17 A 11:45

participates in the manufacture and distribution of the Kugel Patch. It also manufactures and supplies DAVOL with material that forms part of the Kugel Patch. BARD at all times relevant did substantial and continuous business in the State of Rhode Island.

## Jurisdiction

4. The Court has subject matter and personal jurisdiction over the issues and the parties to this cause of action. DAVOL is a resident of the State of Rhode Island who manufacturers the product in Rhode Island. DAVOL's principal place of business is the State of Rhode Island. Ms. JONES brings this complaint solely under state law and not under federal law and specifically not under the United States Constitution, or any of its amendments. Ms. JONES believes and alleges that causes of action exist under the hereinafter set out state law claims for the conduct complained of herein.

## Facts

5. Defendant DAVOL designed, manufactured and distributed the Composix Kugel Patch, a hernia mesh patch that was inserted into Ms. JONES's body.

6. Defendant DAVOL, through its agents, servants and employees, participated in the manufacture and delivery of the Composix Kugel Patch that was inserted into Ms. JONES's body.

7. The Defendants submitted their 510k Application to the Federal Drug Administration (hereinafter referred to as the "FDA") on January 22, 2001. Following this 510k Application the Composix Kugel Patch was authorized by the FDA as a Class II medical device.

8. On June 16, 2005, Ms. JONES had an incisional hernia repair performed at Memorial

Hospital Union County, in Maryville, Ohio. Ms. JONES had a Large Oval Composix Kugel Patch implanted during this procedure.

9. The Composix Kugel Patch hernia repair product implanted in Ms. JONES was designed, manufactured, sold and distributed by DAVOL to be used by surgeons for hernia repair surgeries and was further represented by DAVOL to be an appropriate, cost-effective and suitable product for such purpose.

10. An FDA Class I recall is issued for problems related to medical devices that are potentially life-threatening or could cause a serious risk to the health of the patients implanted with the devices.

11. On December 22, 2005, DAVOL recalled many sizes of Composix Kugel Patches under a Class I recall notice.

12. The Composix Kugel Patch was recalled due to a faulty "memory recoil ring" that can break under pressure. Incidents of ring migration, intestinal fistulae, bowel perforation and even death have been reported.

13. On March 24, 2006, the initial Class I recall on the Composix Kugel Patch was expanded to include several more sizes of the patch and numerous additional lots of the defective hernia mesh product.

14. On January 10, 2007, the existing recall on the Composix Kugel Patch was again expanded to encompass further production lots of the defective hernia mesh product.

15. Within a few months of having the defective Kugel patch implanted, Ms. JONES began suffering extreme and abdominal pains for which she sought treatment from her physicians. Unaware of the defective nature of the Composix Kugel Patch and its memory recoil ring, Ms.

JONES physicians were unable to diagnose the cause of her suffering as the ring break defect failed to show up on the diagnostic imaging devices which were used.

16. Due to the increasing pain which Ms. JONES was experiencing and CT scans which began to show evidence of inflammation around the hernia repair site, an exploratory and repair surgery was scheduled by Ms. JONES' physicians

17. On or about June 6, 2006, Dr. Pelfrey performed an upper abdominal exploratory procedure which became a full repair and replacement surgery once he noted the condition of the Composix Kugel Patch. Dr. Pelfrey noted a portion of the omentum adherent to the mesh in an area of the Kugel Patch where there was "some inward buckling." Dr. Pelfrey further noted that "there was a breakage in the ring" at this location of the patch. All around this defective patch, there was noted to be "a tremendous amount of very thickened scar tissue." The entirety of the Patch was excised because the defective Kugel patch was the source of all of Ms. JONES' pain and complication.

18. Ms. JONES has suffered and will continue to suffer physical pain and mental anguish.

19. Ms. JONES has incurred substantial medical bills and Ms. JONES has suffered loss of other monies.

20. DAVOL and BARD withdrew a large number of Composix Kugel Patches as a result of the high complication and failure rate of the product.

21. Upon information and belief DAVOL and BARD failed to comply with the FDA application and reporting requirements.

22. Upon information and belief DAVOL and BARD were aware of the high degree of complication and failure rate associated with their Composix Kugel Patch before it was recalled.

23. Upon information and belief DAVOL and BARD were aware of the defect in manufacture and design prior to the recall of their Kugel Patch.

24. Upon information and belief, the complications and failures associated with the Composix Kugel Patches are not limited to the sizes which DAVOL and BARD has already recalled.

25. Upon information and belief, DAVOL and BARD were aware of the defect in manufacture and design of the non-recalled Kugel Composix Patch sizes and chose not to issue a recall on all Kugel Composix Patches in the face of the high degree of complication and failure rates

**COUNT I**
**Negligence**

26. Ms. JONES re-alleges and incorporates by reference each and every allegation contained in the preceding paragraphs as though fully set forth herein.

27. Defendants DAVOL and BARD were negligent to Ms. JONES in the following respects:

28. DAVOL and BARD at all times mentioned had a duty to properly manufacture, test, inspect, package, label, distribute, market, examine, maintain, supply, provide proper warnings and prepare for use the Composix Kugel Patch.

29. DAVOL and BARD at all times mentioned knew or in the exercise of reasonable care should have known, that the Composix Kugel Patches were of such a nature that they were not properly manufactured, tested, inspected, packaged, labeled, distributed, marketed, examined, sold supplied, prepared and/or provided with the proper warnings, and were unreasonably likely to injure the Composix Kugel Patch's users.

30. DAVOL and BARD so negligently and carelessly designed, manufactured, tested,

failed to test, inspected, failed to inspect, packaged, labeled, distributed, recommended, displayed, sold, examined, failed to examine and supplied the Composix Kugel Patch, that they were dangerous and unsafe for the use and purpose for which it was intended.

31. DAVOL and BARD were aware of the probable consequences of the Composix Kugel Patch. DAVOL and BARD knew or should have known the Composix Kugel Patch would cause serious injury; they failed to disclose the known or knowable risks associated with the Composix Kugel Patch. DAVOL and BARD willfully and deliberately failed to avoid those consequences, and in doing so, DAVOL and BARD acted in conscious disregard of the safety of Ms. JONES.

32. Defendants DAVOL and BARD owed a duty to Ms. JONES to adequately warn her and hers treating physicians, of the risks of breakage, separation, tearing and splitting associated with the Composix Kugel Patch and the resulting harm and risk it would cause patients.

33. Defendants DAVOL and BARD breached their duty by failing to comply with state and federal regulations concerning the study, testing, design, development, manufacture, inspection, production, advertisement, marketing, promotion, distribution, and/or sale of the Composix Kugel Patch.

34. As a direct and proximate result of the duties breached, the Composix Kugel Patch used in Ms. JONES's hernia repair surgery failed, resulting in Ms. JONES suffering pain and harm.

35. As a direct and proximate result of DAVOL's and BARD's negligence, Ms. JONES has suffered injuries and damages.

36. DAVOL's and BARD's conduct in continuing to market, sell and distribute the Composix Kugel Patch after obtaining knowledge they were failing and not performing as

represented and intended, showed complete indifference to or a conscious disregard for the safety of others justifying an award of additional damages for aggravating circumstances in such a sum which will serve to deter DAVOL, BARD and others from similar conduct in the future.

**Wherefore,** Ms. JONES requests a judgment against DAVOL and BARD for damages in a sum to confer jurisdiction upon this Court together with interest on that amount at the legal rate from the date of judgment until paid, for court costs and for other such relief this Court deems just and appropriate.

## COUNT II
## Violation of the R.I. Deceptive Trade Practices Act

37. Ms. JONES re-alleges and incorporates by reference each and every allegation contained in preceding paragraphs as though fully set forth herein.

38. Defendants DAVOL and BARD engaged in unfair and deceptive trading practices with the Ms. JONES in the following respects:

39. Defendants DAVOL and BARD are merchants, who study, test, design, develop, manufacture, inspect, produce, market, promote, advertise, distribute and/or sell the Composix Kugel Patch for hernia repair surgery.

40. Defendants DAVOL and BARD knowingly committed unfair and deceptive practices in their study, test, design, development, manufacture, inspection, production marketing, promotion, advertising, distribution and/or sale of the Composix Kugel Patch for hernia repair surgery.

41. Defendants DAVOL and BARD knowingly committed unfair and deceptive practices when they failed to safely design and construct an effective Composix Kugel Patch for hernia repair surgery.

42. While Defendants DAVOL and BARD knew or reasonably should have known that some Composix Kugel Patches were at risk while they were engaged in the studying, testing, designing, developing, manufacturing, inspecting, producing, advertising, marketing, promoting, distributing, and or selling of the Composix Kugel Patch for hernia repair surgery, specifically that the "memory recoil ring" upon being subjected to stress after placement in the intra-abdominal space posed a significant risk of breakage, separation, migration, tearing and splitting that posed the danger of severe harm and death to patients.

43. DAVOL and BARD did not inform the FDA prior to December 2005 of its knowledge concerning the dangers posed to patients of its Composix Kugel Patches which were susceptible to failure and subject to the Class I recall.

44. DAVOL and BARD did not inform the public at large prior to December 2005 of its knowledge concerning the dangers posed to patients of its Composix Kugel Patches which were susceptible to failure and subject to the Class I recall.

45. DAVOL and BARD failed to give adequate warnings regarding the use and potential problems with such patches used for hernia repair.

46. DAVOL's and BARD's actions occurred while they were engaged in trade and commerce, and all of the conduct occurred during the course of their business.

47. DAVOL's and BARD's conduct in continuing to market, sell and distribute the Composix Kugel Patch after obtaining knowledge that they were failing and not performing as represented and intended, showed complete indifference to or a conscious disregard for the safety of others justifying an award of additional damages for aggravating circumstances in such a sum which will serve to deter DAVOL, BARD and others from similar conduct in the future.

**Wherefore,** Ms. JONES requests a judgment against DAVOL and BARD for damages in a sum as permitted by statute together with interest on that amount at the legal rate from the date of judgment until paid, for court costs and for other such relief this Court deems just and appropriate.

**COUNT III**
**Strict Product Liability**

48. Ms. JONES re-alleges and incorporates by reference each and every allegation contained in preceding paragraphs as though fully set forth herein.

49. Defendants DAVOL and BARD are strictly liable to Ms. JONES in the following respects:

50. DAVOL and BARD designed, manufactured, assembled, distributed, conveyed and/or sold the Kugel Patch for hernia repair surgery.

51. The Composix Kugel Patches subject to the Class I recall were defective because they failed to perform safe and effectively for the purpose they were originally designed. Ms. JONES's Composix Kugel Patch was a Class I recalled device that failed while in hers body causing her to develop serious physical complications which required subsequent, painful and unnecessary removal surgery of hers Composix Kugel Patch.

52. At all times mentioned, the Composix Kugel Patch was substantially in the same condition as when it left the possession of DAVOL.

53. The Composix Kugel Patch implanted into Ms. JONES was being used in a manner reasonably anticipated at the time it was implanted in her by hers surgeon.

54. The Composix Kugel Patches, like the one found in Ms. JONES, at the time they left the possession of DAVOL and BARD were inherently dangerous for their intended use and were

unreasonably dangerous products which presented and constituted an unreasonable risk of danger and injury to Ms. JONES as follows:

i. The Composix Kugel Patch was sold in a defective condition by design and manufacture;

ii. The Composix Kugel Patch as designed and manufactured was unsafe to Ms. JONES;

iii. The Composix Kugel Patch as designed and manufactured was unreasonably dangerous to Ms. JONES;

iv. The Composix Kugel Patch did not perform safely as an ordinary consumer/patient, like Ms. JONES, would expect;

v. The Composix Kugel Patch as designed and manufactured was unsafe for its intended use;

vi. DAVOL and BARD failed to warn the end user about the dangers and risks of the product;

vii. DAVOL and BARD knew the component parts of the Composix Kugel Patch as implemented through design and/or manufacture could cause injury to the end user;

viii. Failing to implement an adequate, safe and effective "memory recoil ring" and/or its interaction with the mesh of the Composix Kugel Patch to withstand the foreseeable stresses they would be subject to within the intra-abdominal space;

ix. Failing to avoid migration of the Composix Kugel Patch and/or its components from the initial site of the hernia repair surgery.

x. Any other acts or failures to act by DAVOL or BARD regarding the studying, testing, designing, developing, manufacturing, inspecting, producing, advertising, marketing, promoting, distributing, and/or sale of Composix Kugel Patches for hernia repair surgery as will be learned during discovery.

55. DAVOL's and BARD's conduct in continuing to market, sell and distribute the Composix Kugel Patch after obtaining knowledge they were failing and not performing as represented and intended, showed complete indifference to or a conscious disregard for the safety of others justifying an award of additional damages for aggravating circumstances in such a sum which will serve to deter DAVOL, BARD and others from similar conduct in the future.

**Wherefore,** Ms. JONES requests a judgment against DAVOL and BARD for damages in a sum as permitted by statute together with interest on that amount at the legal rate from the date of judgment until paid, for court costs and for other such relief this Court deems just and appropriate.

## COUNT IV
### Negligent Infliction of Emotional Distress

56. Ms. JONES re-alleges and incorporates by reference each and every allegation contained in preceding paragraphs as though fully set forth herein.

57. Defendants DAVOL and BARD are liable to Ms. JONES for the negligent infliction of emotional distress in the following respect:

58. Ms. JONES suffered severe emotional distress, which was as a result of Defendant's negligent conduct in studying, designing, developing, testing, inspecting, manufacturing, producing,

advertising, marketing, promoting, distributing, and/or selling of the Composix Kugel Patch for hernia repair surgery.

59. Ms. JONES suffered severe emotional distress, which was as a result of DAVOL's and BARD's negligent conduct in failing to adequately and safely design and construct an effective and safe Composix Kugel Patch for hernia repair surgery.

60. Therefore, DAVOL and BARD are liable to Ms. JONES.

61. DAVOL's and BARD's conduct in continuing to market, sell and distribute the Composix Kugel Patch after obtaining knowledge they were failing and not performing as represented and intended, showed complete indifference to or a conscious disregard for the safety of others justifying an award of additional damages for aggravating circumstances in such a sum which will serve to deter DAVOL, BARD and others from similar conduct in the future.

**Wherefore**, Ms. JONES requests a judgment against DAVOL and BARD for damages in a sum to confer jurisdiction upon this Court together with interest on that amount at the legal rate from the date of judgment until paid, for court costs and for other such relief this Court deems just and appropriate.

## COUNT V
## Intentional Infliction of Emotional Distress

62. Ms. JONES re-alleges and incorporates by reference each and every allegation contained in preceding paragraphs as though fully set forth herein.

63. Defendants DAVOL and BARD are y liable to Ms. JONES for the intentional infliction of emotional distress in the following respect:

64. Ms. JONES suffered severe emotional distress, which was as a result of DAVOL's

and BARD's extreme outrageous, intentional, willful, and reckless conduct in studying, designing, developing, testing, inspecting, manufacturing, producing, advertising, marketing, promoting, distributing, and/or sale of the Composix Kugel Patch for hernia repair surgery.

65. Ms. JONES suffered severe emotional distress, which was as a result of DAVOL's and BARD's extreme outrageous, intentional, willful, and reckless conduct in failing to adequately and safely design and construct an effective and safe Composix Kugel Patch for hernia repair surgery, in complete and reckless disregard of safety to Ms. JONES.

66. Therefore, DAVOL and BARD are liable to Ms. JONES.

67. DAVOL's and BARD's conduct in continuing to market, sell and distribute the Composix Kugel Patch after obtaining knowledge they were failing and not performing as represented and intended, showed complete indifference to or a conscious disregard for the safety of others justifying an award of additional damages for aggravating circumstances in such a sum which will serve to deter DAVOL, BARD and others from similar conduct in the future.

**Wherefore,** Ms. JONES requests a judgment against DAVOL and BARD for damages in a sum to confer jurisdiction upon this Court together with interest on that amount at the legal rate from the date of judgment until paid, for court costs and for other such relief this Court deems just and appropriate.

## COUNT VI
### Breach of Implied Warranty

68. Ms. JONES re-alleges and incorporates by reference each and every allegation contained in preceding paragraphs as though fully set forth herein.

69. Defendants DAVOL and BARD are liable to Ms. JONES for their breach of implied

warranty in the following respect:

70. DAVOL and BARD sold the Kugel Patch which was implanted in Ms. JONES. DAVOL and BARD impliedly warranted to Ms. JONES, hers physicians and health care providers, that the Composix Kugel Patch was of merchantable quality and safe for the use for which they were intended.

71. DAVOL and BARD knew or should have known that the Composix Kugel Patch at the time of sale was intended to be used for the purpose of surgically implanting them into the body for hernia repair.

72. Ms. JONES, hers physicians and health care providers reasonably relied on DAVOL's and BARD's judgment, indications and statements that the Composix Kugel Patch was fit for such use.

73. When the Composix Kugel Patches was distributed into the stream of commerce and sold by DAVOL and BARD, they were unsafe for their intended use, and not of merchantable quality, as warranted by DAVOL and BARD in that they had very dangerous propensities when used as intended and implanted into a patient's body where they could cause serious injury of harm or death to the end user.

74. Ms. JONES suffered such injuries and damages as a result of DAVOL and BARD's conduct and actions.

**COUNT VII**
**Failure to Warn**

75. Ms. JONES re-alleges and incorporates by reference each and every allegation contained in preceding paragraphs as though fully set forth herein.

76. In the course of business, DAVOL and BARD designed, manufactured and sold the

Composix Kugel Patch to St. Joseph Health Center for hernia repair surgeries.

77. At the time of the design, manufacture and sale of the Composix Kugel Patch, and more specifically at the time Ms. JONES received the Composix Kugel Patch, they were defective and unreasonably dangerous when put to their intended and reasonably anticipated use. Further the Composix Kugel Patches were not accompanied by proper warnings regarding significant adverse consequences associated with the Composix Kugel Patch.

78. BARD and DAVOL failed to provide any warnings, labels or instructions of its dangerous propensities that were known or reasonably scientifically knowable at the time of distribution. The reasonably foreseeable use of the products involved significant dangers not readily obvious to the ordinary user of the products. BARD and DAVOL failed to warn of the known or knowable injuries associated with malfunction of the Composix Kugel Patch, including but not limited to rupture of the Patch and severe peritonitis and infection which would require subsequent surgical procedures and could result in severe injuries.

79. The dangerous and defective conditions in the Composix Kugel Patches existed at the time they were delivered by the manufacturer to the distributor. At the time Ms. JONES had hers hernia repair surgery the Composix Kugel Patch was in the same condition as when manufactured, distributed and sold.

80. Ms. JONES did not know at the time of use of the Composix Kugel Patch, not at any time prior thereto, of the existence of the defects in the Patches.

81. Ms. JONES suffered the aforementioned injuries and damages as a direct result of DAVOL and BARD's failure to warn.

82. The conduct of BARD and DAVOL in continuing to market, promote, sell and

distribute the Composix Kugel Patch after obtaining knowledge that the products were failing and not performing as represented and intended, showed a complete indifference to or conscious disregard for the safety of others justifying an award in such sum which will serve to deter BARD, DAVOL and others from similar conduct.

**Wherefore,** Ms. JONES respectfully requests judgment in hers favor and against DAVOL and BARD for such amount that is determined to be fair and reasonable, for such other relief as may be fair and reasonable under the circumstances and for hers costs.

**PLAINTIFF REQUESTS A TRIAL BY JURY ON ALL COUNTS.**

Plaintiff, LYNN JONES
By her Attorneys,

Donald A. Migliori (#4936)
MOTLEY RICE LLC
321 South Main Street
P.O. Box 6067
Providence, RI 02940-6067
401-457-7700
401-457-7708 FAX

Jon C. Conlin
Craig P. Niedenthal
Ernest Cory
Stephen R. Hunt, Jr.
CORY WATSON CROWDER & DEGARIS
2131 Magnolia Avenue
Birmingham, Alabama 35209
205-328-2200
205-326-7896

Fred Thompson, III

Rhett D. Klok
Fred Thompson
Henry Leventis
Carmen Scott
MOTLEY RICE LLC
28 Bridgeside Blvd.
P.O. Box 1792
Mt. Pleasant, SC 29465
843-216-9000
843-216-9450 FAX

Teresa C. Toriseva
Nancy Wilkins
WEXLER TORISEVA WALLACE LLP
1446 National Road
Wheeling, WV
304-238-0066
304-238-0149 FAX

Edward Wallace
Mark Miller
WEXLER TORISEVA WALLACE LLP
One North LaSalle Street, Suite 2000
Chicago, Illinois 60602
312-346-2222
312-346-0022 FAX

Dated:

# B

**IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF RHODE ISLAND**

| | | |
|---|---|---|
| LYNN JONES, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No.: 1:07-cv-00190-ML-DLM |
| | ) | |
| DAVOL INC. and C.R. BARD, INC., | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

**AMENDED NOTICE OF REMOVAL**

Defendant Davol Inc. ("Davol) and Defendant C.R. Bard, Inc. ("Bard"), by their undersigned counsel, hereby file this Amended Notice of Removal to cure a misstatement contained within their original Notice of Removal filed on May 23, 2007. With that original Notice of Removal the Defendants removed the above-captioned matter from the Superior Court of Rhode Island, Providence County, to the United States District Court for the District of Rhode Island, pursuant to 28 U.S.C. §§ 1332, 1441, and 1446. With this Amended Notice of Removal, Defendants respectfully state:

1. Plaintiff filed this action in Rhode Island Superior Court, Providence County, on or about May 15, 2007. Davol has not been served with a copy of the Complaint or any state process. Bard was served on May 22, 2007.

2. As more fully set forth below, this case is properly removed to this Court pursuant to 28 U.S.C. § 1441 because Defendants have satisfied the procedural requirements for removal, and this Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1332(a) and 1441.

**I. <u>Defendants Have Satisfied the Procedural Requirements for Removal</u>**

3. <u>Removal is timely</u>. Bard was served with the Complaint on May 22, 2007. *See* Att. A (copy of all process, pleadings, and orders served on Bard). Removal is thus timely since it is prior to 30 days from the date of service.

4. <u>Venue is proper</u>. The Superior Court of Rhode Island, Providence County, is located within the District of Rhode Island, and, therefore, venue is proper in this Court pursuant to 28 U.S.C. § 120 because it is "the district and division embracing the place where such action is pending." 28 U.S.C. § 1441(a).

5. No further proceedings have been had in the state court action.

6. No previous application has been made for the relief requested herein.

7. A copy of the written notice required by 28 U.S.C. § 1446(d) was attached as to Defendants' original Notice of Removal (Att. B), and that notice has been filed in the Superior Court of Rhode Island, Providence County, and served on Plaintiff.

**II. <u>Removal is Proper in This Case</u>**

8. This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332 because this is a civil action between citizens of different states and the amount in controversy exceeds the sum of $75,000 exclusive of costs and interest.

**A. Complete diversity exists between Plaintiff and Defendants.**

9. The Complaint states that Plaintiff is a citizen and resident of the State of North Carolina. *See* Compl. ¶ 1.

10. Davol is, and has been at all relevant times, a corporation incorporated under the laws of Delaware with its principal place of business in Rhode Island. For purposes of

determining jurisdiction pursuant to 28 U.S.C § 1332(c)(1), Davol is not a citizen of the State of North Carolina.

11. Bard is, and has been at all relevant times, a corporation incorporated under the law of the State of New Jersey with its principal place of business in New Jersey as well. For purposes of determining jurisdiction pursuant to 28 U.S.C § 1332(c)(1), Bard is not a citizen of the State of North Carolina.

**B. The amount in controversy requirement is satisfied.**

12. The Complaint does not specify an amount of damages sought. However, the amount in controversy exceeds the jurisdictional requisite in 28 U.S. C. § 1332.

13. Plaintiff's Complaint alleges that Plaintiff "suffer[ed] extreme . . . abdominal pains" (Compl. ¶ 15) that caused her to undergo "exploratory and repair surgery" (id. ¶ 16) which at a later date "became a full repair and replacement surgery" (id. ¶ 17). As a result, Plaintiff alleges that she "continue[s] to suffer physical pain and mental anguish" (id. ¶ 18), and that she "has incurred substantial medical bills and . . . suffered loss of other monies" (id. ¶ 19).

14. Plaintiff's Complaint makes it "facially apparent that the claims are likely above" the requisite amount-in-controversy. *Allen v. R & H Oil & Gas Co.*, 63 F.3d 1326, 1335 (5th Cir. 1995). Likewise, federal courts in analogous cases have held that the amount-in-controversy threshold is met even though the plaintiff has not expressly pled an amount in controversy because, as here, "the complaint . . . does not preclude recovery in excess of $75,000." *In re Rezulin Prods. Liab. Litig.*, 133 F. Supp. 2d 272, 296 (S.D.N.Y. 2001); *see also Standard Fire Ins. Co. v. Gordon*, 376 F. Supp. 2d 218, 224 n.6 (D.R.I. 2005) (noting that jurisdictional amount-in-controversy requirement is met where from "the nature of the

claims in the underlying suit, it is apparent that the amount-in-controversy could well exceed $75,000").

WHEREFORE, Defendants respectfully remove this action from the Superior Court of Rhode Island, Providence County, to this Court pursuant to 28 U.S.C. §§ 1332(a) and 1441.

Date: May 24, 2007

Respectfully submitted,

BY: ______________________

Mark T. Nugent, #2637
Thomas M. Robinson, #6193
Morrison Mahoney LLP
121 South Main Street, Suite 600
Providence, RI 02903
Tel: (401) 331-4660
Fax: (401) 351-4420
Mnugent@morrisonmahoney.com
Trobinson@morrisonmahoney.com

ATTORNEYS FOR DEFENDANTS C.R. BARD, INC. AND DAVOL INC.

**CERTIFICATE OF SERVICE**

I hereby certify that on May 24, 2007, a true and correct copy of the foregoing Amended Notice of Removal was electronically filed with the Court. This document is available for viewing and downloading from the Court's ECF system. Service of same has been made upon the following in the manner listed below:

Donald A. Migliori
Motley Rice
321 South Main Street
P.O. Box 6067
Providence, RI 02940-6067
*via first-class, postage prepaid, mail*

______________________

# C

Thomson v. Novartis Pharmaceuticals Corp.
D.N.J.,2007.

Only the Westlaw citation is currently available.Alan THOMSON, as administrator of the Estate of Hayley Thomson, Deceased, and In his own Right, and Dayna Thomson, Plaintiffs,
v.
NOVARTIS PHARMACEUTICALS, CORPORATION, Novartis Corporation, Novartis Pharma GMB, Novartis AG, Defendants.
**Civil No. 06-6280 (JBS).**

May 22, 2007.

Christopher A. Seeger, Esq., David R. Buchanan, Esq., SEEGER WEISS, LLP, Newark, NJ, for Plaintiffs.
James D. Hicks, Esq., Cynthia Kendrick, Esq., SPRIGGS & HOLLINGSWORTH, ESQS., Washington, D.C., Ethan Stein, Esq., GIBBONS P .C., Newark, NJ, for Novartis Pharmaceuticals, Corporation.

***OPINION***

SIMANDLE, District Judge.

***1** This matter is before the Court upon the motion of Plaintiffs Alan Thomson, as administrator of the Estate of Hayley Thomson, deceased, and in his own right, and Dayna Thomson (collectively, the " Plaintiffs") to remand this matter back to New Jersey Superior Court, Law Division, in Atlantic County. [Docket Item No. 9.] Plaintiffs move to remand based on two grounds (1) that the case was not properly removed pursuant to 28 U.S.C. § 1441 and (2) that the case was not properly removed based on federal question jurisdiction.

The principal issue to be decided is whether an in-state defendant who has not been served with process may remove a complaint, based upon diversity jurisdiction, in light of the prohibition in 28 U.S.C. § 1441(b) against removal of diversity cases where an in-state defendant has been " properly joined and served." For the reasons set forth below, this Court will deny Plaintiffs' motion for remand.

**I. *BACKGROUND***

Plaintiffs are Alan Thomson (both individually and as the administrator of the Estate of Hayley Thomson, deceased) and Dayna Thomson (" Plaintiffs"). All Plaintiffs are residents and citizens of Atlanta, Georgia.[FN1] (Compl.¶¶ 6-8.) Defendants are (1) Novartis Pharmaceuticals Corporation ("NPC"), a Delaware corporation with a principal place of business in East Hanover, New Jersey, (2) Novartis Pharma GmbH, a German corporation doing business in New Jersey, (3) Novartis Corporation, a New York corporation with its principal place of business in Florham Park, New Jersey, and (4) Novartis AG, a Swiss corporation. (Compl.¶¶ 9-11.) NPC, Novartis Pharma GmbH, Novartis Corporation and Novartis AG shall be referred to collectively as the "Defendants."

> FN1. The Court notes that Plaintiffs' brief states that the Plaintiffs are residents of Pennsylvania but the Complaint states that the Plaintiffs are residents of Georgia. (Compl.¶¶ 6-8). The distinction is not relevant to the matter currently pending before the Court but this Court will follow what is in the Complaint rather than in Plaintiffs' brief and conclude that Plaintiffs are residents of Georgia.

Plaintiffs' Complaint states that Defendants designed, manufactured and distributed a topical immunosupressant called pimecrolimus which is marketed under the trademark, Elidel. (Compl.¶ 1-2, 19.) In 2003, Plaintiffs' child Hayley went to a physician for treatment of Hayley's dermatitis. The physician prescribed Elidel for Hayley's dermatitis

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

and Plaintiffs applied Elidel to Hayley in accordance with the recommendations of her physician. (*Id.* ¶ 60.) Plaintiffs claim that as a direct result of the use and application of Elidel, Hayley suffered serious bodily injury, eventually being diagnosed with cancer (acute myelogenous leukemia) in February, 2004. (*Id.* ¶ 61.) On December 19, 2004, Hayley died from complications from her cancer caused, according to the Complaint, by her exposure to Elidel. (*Id* . ¶ 62.)

Plaintiffs bring an eight-count complaint alleging (1) products liability-failure to warn; (2) breach of express warranty; (3) violation of the New Jersey Consumer Fraud Act; (4) breach of implied warranty; (5) products liability-defective design; (6) punitive damages under common law; (7) wrongful death; and (8) a survival action.[FN2] Plaintiffs filed this action in Superior Court of New Jersey, Atlantic County on December 19, 2006. (Certification of David R. Buchanan, Ex. 1.) Plaintiffs submit an affidavit stating that they attempted to serve NPC on December 22, 2006 but that NPC's office was closed. (Buchanan Cert., Ex. 2.) [FN3] Plaintiffs state that they attempted service on four other occasion-on December 26, 27, 28 and 29-but that Plaintiffs' process server was told each time that nobody was present to accept service on behalf of NPC. (*Id.*) No one was present to accept service on NPC's behalf due to the fact that NPC was closed for the holidays from 2:00 p.m. on December 22, 2006 through January 2, 2007. (Affidavit of Cynthia L. Kendrick, Esq. ¶ 8, Ex. A.) Security personnel were the only personnel present during the holiday closing and the remainder of NPC, including the legal department, was closed. (*Id.* ¶ 9.)

FN2. Plaintiffs' Complaint is misnumbered as it does not include a Count V. The Complaint goes directly from Count IV to Count VI.

FN3. Plaintiffs' exhibits are not properly organized. The affidavit referred to here is the last page of Exhibit 1. There is no Exhibit 2 in Plaintiffs' briefing papers.

***2** On December 29, 2006, before being served with process, NPC removed this case to this Court pursuant to 28 U.S.C. §§ 1331, 1367, 1441 and 1446. In an affidavit submitted to the Court after oral argument (upon the Court's request), outside counsel for NPC (Spriggs and Hollingsworth, Esqs.) stated through Cynthia Kendrick, Esquire, that they first received notice that the Complaint had been filed on December 19, 2006 and received a copy of the Complaint on December 28, 2006 from a private docketing service. (Kendrick Aff. ¶ 3, 4.) Counsel for NPC then drafted removal papers on December 28 and 29 and filed the papers with this Court on December 29, 2006. (*Id.* ¶ 6.) Counsel states that at no time prior to filing the removal papers did she know about Plaintiffs' attempts to serve NPC. (*Id.* ¶ 7.) Finally, on January 2, 2007, the first day NPC reopened after the holidays, NPC accepted service of the Complaint. (Buchanan Cert., Ex. 3; Kendrick Aff. ¶ 10.)

Defendant NPC's notice of removal, filed in this Court before NPC or any other defendant was served with process, asserts that this Court's jurisdiction is premised upon both diversity of citizenship under 28 U.S.C. § 1332 and federal question under 28 U.S.C. § 1331 arising from the alleged preemption of such claims by the Food, Drug and Cosmetic Act. Plaintiffs now file this motion for remand, arguing (1) that removal of this matter was improper and the case should be remanded to New Jersey Superior Court, and (2) the Court should award Plaintiffs attorney's fee Plaintiffs incurred in connection with NPC's improper removal.

## II. *PLAINTIFFS' MOTION TO REMAND*

In addressing Plaintiffs' motion to remand, the Court must address two issues (1) whether this action was properly removed under 28 U.S.C. § 1441(b) and (2) whether removal was proper on federal question grounds. The Court will first address whether removal was proper under § 1441(b) and the "joined and served" requirement.

Civil actions brought in a state court may generally

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

be removed to district court if the district court has original jurisdiction. *See* 28 U.S.C. § 1441(a). Thus, an action based on state law (such as the present case) is removable to federal court when (1) the district court would have original diversity jurisdiction (because the amount in controversy exceeds $75,000 and there is complete diversity of citizenship between the plaintiffs and defendants), *see* 28 U.S.C. § 1332, and (2) when none of the parties properly joined and served at the time of the removal are residents of the forum state. *See* 28 U.S.C. § 1441(b). Indeed, it is this second requirement-that an action is "removable only if none of the parties in interest *properly joined and served* as defendants is a citizen of the State in which such action is brought"-that is central to the matter before the Court. 28 U.S.C. § 1441(b) (emphasis aded).

In the Third Circuit, the removing party bears the burden of demonstrating that removal was proper. *Boyer v. Snap-On Tools Corp.*, 913 F.2d 108, 111 (3d Cir.1990); *Frick v. Novartis Pharm., Corp.*, No. 05-5429, 2006 U.S. Dist. LEXIS 9178, *2 (D.N.J. Feb. 22, 2006). "Removal statutes are to be strictly construed against removal and all doubts should be resolved in favor of remand ." *Batoff v. State Farm Ins. Co.*, 977 F.2d 848, 851 (3d Cir.1992)(quoting *Steel Valley Auth. v. Union Switch & Signal Div.*, 809 F.2d 1006, 1012 n. 6 (3d Cir.1987)); *see also Samuel-Bassett v. KIA Motors Am., Inc.*, 357 F.3d 392, 396 (3d Cir.2004). Therefore, "a district court must resolve all contested issues of substantive fact in favor of the plaintiff and must resolve any uncertainties as to the current state of controlling substantive law in favor of the plaintiff." *Boyer*, 913 F.2d at 111.

***3** Plaintiffs move pursuant to 28 U.S.C. § 1447(c) to remand this case to New Jersey Superior Court. Plaintiffs contend that because NPC is a resident of New Jersey, the forum state, removal is not permitted under § 1441(b). According to Plaintiffs the purpose of the "joined and served" requirement of § 1441(b) is to prevent a plaintiff from blocking removal of a matter by joining a defendant resident party whom it does not even serve. (Pl.'s Br. at 3 citing *Stan Winston Creatures, Inc. v. Toys "R" Us, Inc.*, 314 F.Supp.2d 177, 181 (S.D.N.Y.2003)). This requirement, according to Plaintiffs, does not take effect until the plaintiff has served at least one defendant in the litigation, and allowing forum defendants (like NPC) to remove actions in diversity prior to service would "essentially remove the 'joined and served' requirement from § 1441(b). " (*Id.* at 4.)

Plaintiffs argue that this Court should follow the holding of *Holmstrom v. Harad*, No. 05-2714, 2005 U.S. Dist. LEXIS 16694 (N.D.Ill. Aug. 11, 2005). In *Holmstrom*, the district court addressed the issue of "whether, under § 1441(b), the citizenship of a forum defendant defeats removal when, prior to removal, no defendant has been served or otherwise appeared." *Id.* at *4. The *Holmstrom* plaintiff filed a shareholder derivative suit against twenty-eight officers and directors in Illinois state court. *Id.* at *2. Two of the twenty-eight defendants were Illinois residents. *Id.* Prior to service on any defendant, one of the non-forum defendants removed the action to U.S. District Court for the Northern District of Illinois. *Id.* Plaintiffs moved for remand and the district court granted the motion stating that the presence of the forum defendants defeated the attempts to remove and that the "joined and served" requirement does not apply when no defendant has been served or otherwise appeared. *Id.* at *7. Plaintiffs argue here that, as in *Holmstrom*, Plaintiffs made numerous attempts to serve NPC but were unsuccessful, including a visit to NPC's office on December 29, 2006 in which Plaintiffs' process server was told that no one was available to accept service until January 2, 2007. Therefore, the "joined and served" requirement does not apply.[FN4]

FN4. Plaintiffs also articulate policy reasons that support their position, stating that "large corporate defendants ... could easily monitor court dockets and immediately remove diversity cases prior to service ... [enabling them] to prevent any plaintiff from pursuing a state court action against them." Removal of such actions would be particularly easy in New Jersey, according to Plaintiffs, due to New Jersey's requirement that a plaintiff obtain a track assignment number (which can be

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

issued ten days from filing of the complaint) prior to serving the complaint and "creates a window during which a New Jersey defendant can remove a case prior to service, thereby escaping the removal limitation of § 1441(b)" and eliminates any time period allotted for a plaintiff to serve the complaint. *See* N.J.R. 4:5A-2(a).

NPC opposes the motion to remand, arguing that it had not been served at the time it removed this matter and therefore is not precluded from removing under § 1441(b). According to NPC, this case falls within the Court's original jurisdiction (based on diversity) and therefore was properly removed. According to NPC, a plain reading of § 1441(b), supported by substantial authority, establishes that, so long as NPC removed this case prior to being served with process, removal was proper. *See Stan Winston Creatures, Inc.,* 314 F.Supp.2d at 180; *Frick v. Novartis Pharm. Corp.,* 2006 U.S. Dist. LEXIS 9178, at *6 (where NPC was not properly joined and served at the time it file its notice of removal, the defendant was entitled to removal under the plain language of the statute.) NPC also argues that, under Third Circuit precedent, this Court must give effect to the plain reading of § 1441(b) unless the result would be " demonstrably at odds" with Congressional intent or creates such a "bizarre" outcome "that Congress could not have intended it." *Mitchell v. Horn,* 318 F.3d 523, 535 (3d Cir.2003).

***4** The Court agrees with NPC and will deny Plaintiffs' motion for remand as the plain reading of § 1441(b) and a straightforward application of it in this case warrants denial of Plaintiffs' motion. The Third Circuit has held that, when dealing with issues of statutory construction, this Court's task is to give effect to the will of Congress, and where its will has been expressed in reasonably plain terms, that language must ordinarily be regarded as conclusive. If the language of the statute is plain, the sole function of the court is to enforce the statute according to its terms. The plain meaning is conclusive, therefore, except in the rare cases in which the literal application of a statute will produce a result demonstrably at odds with the intentions of its drafters.

*Abdul-Akbar v. McKelvie,* 239 F.3d 307, 313 (3d Cir.2001) (internal quotations and citations omitted); *Frick,* 2006 U.S. Dist. LEXIS 9178, at *6-7. This language is unambiguous-removal is prohibited only where a defendant, who is a resident of the forum state, has been "properly joined *and served.*" 28 U.S.C. § 1441(b). Here, at the time NPC removed this case to this Court (December 29, 2006), NPC had yet to be served (January 2, 2007). Moreover, there is no evidence that NPC was actively avoiding service-rather, because NPC was closed for the holidays between December 22, 2006 and January 2, 2007, there was no one at the NPC campus authorized to accept service. (Kendrick Aff. ¶¶ 7-8.) As such, under the plain reading of § 1441(b), removal was not prohibited because NPC (a resident of the forum state) had not been served when it removed this case to this Court.FN5

FN5. Moreover, if a plaintiff were concerned that a corporate defendant could avoid service of process, plaintiff could instead serve the designated corporate agent in the state, as permitted by N .J. Court Rules, R. 4:4-4(a)(6).

This conclusion is supported by considerable case law from this District and others. *See Frick,* 2006 U.S. Dist. LEXIS 9178, at *7 ("[W]e find that the language of the statute is unambiguous"); *Stan Winston Creatures, Inc.,* 314 F.Supp.2d at 180 (" [T]he language of § 1441(b) makes plain that its prohibition on removal applies only where a defendant who has been 'properly joined and served ' is a resident of the forum state"); *Ott v. Consol. Freightway Corp.,* 213 F.Supp.2d 662, 665 (S.D.Miss.2002))("In accordance with [the § 1441(b) ] language ..., courts have held, virtually uniformly, that where, as here, [complete] diversity does exist between the parties, an unserved resident defendant may be ignored in determining removability"); *see also* 14B Wright, Miller & Cooper, *Federal Practice and Procedure* § 3723 at 642 (3d ed. 1998)("The language of Section 1441(b) ... implies that a resident defendant who has not been served may be ignored in determining

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

removability"); *Massey v. Cassens & Sons, Inc.*, No. 05-598, 2006 U.S. Dist. LEXIS 9675, *10-11 (S.D.Ill. Feb. 16, 2006).

Plaintiffs do raise colorable policy arguments that it is unjust that a properly joined defendant could monitor state court dockets and remove cases prior to being served, and that it makes little sense to provide a federal forum to an in-state defendant upon removal of a diversity case, since state courts are certainly as adept as federal courts in applying state law. However, these arguments alone are insufficient to overcome the requirement that this Court give meaning to the plain language of the statute. Congress plainly intended to require service of the complaint, and not just proper joinder, to trigger the preclusion of removal by the forum resident defendant in a diversity case, and it did so by including the phrase "properly joined and served " so that a plaintiff could not frustrate removal of a diversity case by refraining from serving the resident defendant. To adopt plaintiff's arguments here would read the words "and served" out of the statute. Thus, Plaintiffs have not convinced the Court that permitting removal prior to the time of service would be "demonstrably at odds" with Congressional intent or create such a "bizarre" outcome "that Congress could not have intended it." *Mitchell*, 318 F.3d at 535.[FN6]

FN6. Because the Court will deny Plaintiffs' motion to remand on the grounds that removal was proper under § 1441(a) and (b), this Court need not address the issue of whether removal was proper on federal question grounds.

## III. *PLAINTIFFS' REQUEST FOR FEES AND COST*

*5 Plaintiffs also request that this Court award it costs and fees pursuant to 28 U.S.C. § 1447(c). Section 1447(c) provides in pertinent part that "[a]n order remanding the case may require payment of just costs and any actual expenses, including attorney fees, incurred as a result of the removal." The statute gives this Court broad discretion to determine when such an award is appropriate. *See Mints v. Educ. Testing Service*, 99 F.3d 1253, 1260 (3d Cir.1996); *Newton v. Tavani*, 962 F.Supp. 45, 48 (D.N.J .1997). Here, because this Court will not remand the case to state court, Plaintiffs' motion for costs and fees incurred as a result of removal will be denied.

## IV. *CONCLUSION*

For the reasons discussed above, the Court will deny Plaintiffs' motion to remand this action to New Jersey Superior Court. The accompanying Order shall be entered.

## *ORDER*

This matter having come before the Court upon Plaintiffs' motion to remand; and the Court having considered the parties' submissions in support thereof and opposition thereto; and the Court having heard oral argument on the motion on April 13, 2007 and having received supplemental defense submissions in the form of an affidavit, and for the reasons stated in the Opinion of today's date; and for good cause shown;

**IT IS** this ***22nd*** day of **May, 2007** hereby

**ORDERED** that the motion of Plaintiffs to remand [Docket Item No. 9] shall be, and hereby is, ***DENIED.***

D.N.J.,2007.
Thomson v. Novartis Pharmaceuticals Corp.
Slip Copy, 2007 WL 1521138 (D.N.J.)

END OF DOCUMENT

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

# D

**H**
City of Ann Arbor Employees' Retirement System v. Gecht
N.D.Cal.,2007.
Only the Westlaw citation is currently available.
United States District Court,N.D. California.
CITY OF ANN ARBOR EMPLOYEES' RETIREMENT SYSTEM, et al., Plaintiffs,
v.
Guy GECHT, et al., Defendants.
andElectronics for Imaging, Inc., a Delaware Corporation, Nominal Defendant.
**No. C-06-7453 EMC.**
**Docket No. 7.**

March 9, 2007.

Ignacio E. Salceda, David L. Lansky, Douglas John Clark, John Douglas Cooke, Wilson Sonsini Goodrich & Rosati Professional Corporation, Palo Alto, CA, for Defendants.

**ORDER DENYING PLAINTIFF'S MOTION TO REMAND**

EDWARD M. CHEN, United States Magistrate Judge.

***1** Having considered the parties' briefing and accompanying submissions, as well as the oral argument of counsel, the Court hereby **DENIES** Plaintiff City of Ann Arbor Employees' Retirement System's motion to remand. The Court also **DENIES** Plaintiff's request for attorney's fees pursuant to 28 U.S.C. § 1447(c).

## I. *FACTUAL & PROCEDURAL BACKGROUND*

Plaintiff, a retirement system for employees of the City of Ann Arbor, is a shareholder of a company by the name of Electronics for Imaging, Inc. ("EFI" ). Plaintiff filed a derivative suit and class action against various officers and directors of EFI, alleging, *inter alia,* that Defendants breached their fiduciary duty by failing to disclose in EFI's 2006 proxy statement their practice of backdating stock options to their benefit and to shareholders' detriment. EFI's 2006 proxy statement sought shareholder approval for (a) amendments to the 2004 Equity Incentive Plan and (b) an amendment to the 2000 Employee Stock Purchase Plan. *See* Compl. ¶ 43; *see also* Ignacio Decl. ISO Mot. to Dismiss, Ex. A (2006 proxy statement). One of the amendments to the 2004 Equity Incentive Plan was to increase the number of shares of common stock authorized for issuance thereunder by an aggregate 4.5 million shares. The amendment to the 2000 Employee Stock Purchase Plan was to extend and increase a provision providing an automatic share increase in the number of shares authorized for issuance from 2006 through 2012. *See* Compl. ¶ 1. The complaint alleges that the proxy solicitations were misleading because they did not disclose that, from at least 1996 through 2003, the Board improperly back-dated options to certain current or former directors, senior officers, and other employees in violation of previously shareholder approved stock option plans. *See id.* ¶ 2. The thrust of Plaintiff's complaint is that "[a] shareholder who knew that Company executives backdated options granted under prior plans (thereby providing not only improper compensation to EFI directors and employees but also artificially inflating net income and rendering certain tax deductions unavailable) would not have voted in favor of expanding the Compensation Committee's ability to issue stock options under the 2004 Plan or other forms of compensation under the 2000 Employee Stock Purchase Plan." Compl. ¶ 56.

Plaintiff initially filed suit in state court on November 22, 2006. Before Plaintiff could serve the summons and complaint on any of the Defendants in the case, one of the Defendants-namely, Thomas Unterberg-made a general appearance in state court on December 5, 2006, and promptly removed to federal court on the same day. *See* Barry Decl., Exs. C-D. Plaintiff has

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

moved to remand the case back to state court.

## II. *DISCUSSION*

Mr. Unterberg argues that removal is appropriate in the instant case pursuant to the removal provision of the Securities Litigation Uniform Standards Act ("SLUSA"), as well as the general removal statute. *See* 28 U.S.C. § 1441(b). There is a strong presumption against removal jurisdiction. Mr. Unterberg has the burden of establishing that removal is proper. *See Gaus v. Miles, Inc.*, 980 F.2d 564, 566 (9th Cir.1992).

### A. *SLUSA*

*2 In 1995, Congress passed the Private Securities Litigation Reform Act ("PSLRA") to curtail perceived abuses of the class-action vehicle in litigation involving nationally traded securities. *See Merrill Lynch, Pierce, Fenner & Smith v. Dabit,* 547 U.S. 71, 126 S.Ct. 1503, 1510, 164 L.Ed.2d 179 (2006). Among other things, the PSLRA imposed heightened pleading requirements in actions brought pursuant to § 10(b) of the Securities Exchange Act of 1934 and Rule 10-b(5). *See id.* at 1511. However, the PSLRA

had an unintended consequence. It prompted at least some members of the plaintiffs' bar to avoid the federal forum altogether. Rather than face the obstacles set in their path by the Reform Act, plaintiffs and their representatives began bringing class actions under state law, often in state court. The evidence presented to Congress during a 1997 hearing to evaluate the effects of the Reform Act suggested that this phenomenon was a novel one; state-court litigation of class actions involving nationally traded securities had previously been rare. To stem this "shif[t] from Federal to State courts" and "prevent certain State private securities class action lawsuits alleging fraud from being used to frustrate the objectives of" the Reform Act, Congress enacted SLUSA.

*Id.*

The core provision of SLUSA is as follows:

(1) Class action limitations. No covered class action based upon the statutory or common law of any State or subdivision thereof may be maintained in any State or Federal court by any private party alleging-
(A) a misrepresentation or omission of a material fact in connection with the purchase or sale of a covered security; or
(B) that the defendant used or employed any manipulative or deceptive device or contrivance in connection with the purchase or sale of a covered security.
(2) Removal of covered class actions. Any covered class action in any State court involving a covered security, as set forth in paragraph (1), shall be removable to the Federal district court for the district in which the action is pending, and shall be subject to paragraph (1).

15 U.S.C. § 78bb(f)(2). In short, SLUSA provides for the removal and preemption of certain securities class actions filed in state court. However, certain types of class actions are exempted under SLUSA if based on the statutory or common law of the issuer's state of incorporation. *See* 15 U.S.C. § 78bb(f)(3). The exemptions are known as the Delaware carve-outs.

In its motion to remand, Plaintiff does not dispute that its class action-the first cause of action in its complaint-falls within the scope of SLUSA. Plaintiff's only contention is that its class action cannot be removed or preempted pursuant to SLUSA because the class action is covered by one of the Delaware carve-outs, namely, the second carve-out.[FN1] *See also Greaves v. McAuley,* 264 F.Supp.2d 1078, 1085 (N.D.Ga.2003) ("Once a 'covered class action' has been removed to a federal court, if the Delaware carve-out applies, the federal court is required to 'remand such action'... to state court.").

FN1. The Court acknowledges that, in opposition to Mr. Unterberg's motion to dismiss, Plaintiff claims that both Delaware carve-outs are applicable. However, because Plaintiff failed to raise the applicability of the first carve-out in its

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

motion to remand, the Court addresses only the second carve-out.

*3 Under the second Delaware carve-out, a class action is exempt from SLUSA's removal and preemption rules
if it involves-
....
(II) any recommendation, position, or other communication with respect to the sale of securities of an issuer that-
(aa) is made by or on behalf of the issuer or an affiliate of the issuer to holders of equity securities of the issuer; and
(bb) concerns decisions of such equity holders with respect to voting their securities, acting in response to a tender or exchange offer, or exercising dissenters' or appraisal rights.

*Id.* § 78bb(f)(3)(A)(ii). According to Plaintiff, its class action "involve [s] 'recommendations' or ' communications with respect to the sale of securities of an issuer' because EFI was requesting shareholder approval to increase the amount of authorized EFI shares and transfer certain of these shares under certain stock option plans." Mot. at 9. Plaintiff continues that "the communications were made 'by or on behalf of the issuer or an affiliate of the issuer to holders of equity securities' because EFI made the communications to EFI shareholders." *Id.* Finally, Plaintiffs asserts that "the communications involved 'decisions of such equity holders with respect to voting their securities' because EFI asked its shareholders to vote their securities to increase the authorized shares and increase the stock options." *Id.*

In opposition to the motion to remand, Mr. Unterberg argues that the above carve-out does not apply to Plaintiff's class action because the Supreme Court indicated in *Merrill Lynch* that SLUSA is intended to have a broad preemptive/removal effect. *See Merrill Lynch,* 126 S.Ct. at 1513 (stating that " Congress envisioned a broad construction [of SLUSA]" and that "[a] narrow reading of the statute would undercut the effectiveness of the 1995 Reform Act"). However, *Merrill Lynch* is of limited support to Mr. Unterberg's position since, as Plaintiff points out, it does not directly address the scope of the Delaware carve-outs, and in particular, the second carve-out.

Mr. Unterberg further argues that the second Delaware carve-out is not applicable in the instant case because it "is limited to misrepresentations made in connection with proposed mergers or acquisitions." Opp'n at 11. But, as Plaintiff points out, the carve-out contains no such restriction. In fact, the carve-out expressly states that exempted class actions are those that involve communications with respect to the sale of securities that concern decisions of equity holders with respect to voting their securities *or* acting in response to a tender or exchange offer *or* exercising dissenters' or appraisal rights. *See* 15 U.S.C. § 78bb(f)(3). The statute's use of the disjunctive negates Mr. Unterberg's narrow interpretation of the carve-out. Furthermore, courts have applied the carve-out outside the context of a merger or acquisition. *See, e.g., In re Metlife Demutualization Litig.,* No. CV 00-2258(TCP)(AKT), 2006 U.S. Dist. LEXIS 60104, at *21 (E.D.N.Y. Aug. 7, 2006) (finding that second Delaware carve-out applied in case involving reorganization).

*4 Finally, Mr. Unterberg contends that the second Delaware carve-out is not applicable because Plaintiff has not alleged that the shareholder vote at issue was sufficiently related to the sale of securities. *See* Opp'n at 12. Mr. Unterberg does not dispute that the act of granting stock options constitutes the sale of securities. *See Falkowski v. Imation Corp.,* 309 F.3d 1123, 1129-30 (9th Cir.2002) ("The grant of an employee stock option on a covered security is ... a 'sale' of that covered security."). Rather, according to Mr. Unterberg, the problem for Plaintiff is that, in the 2006 proxy statement, Defendants did not seek shareholder approval for the actual granting of stock options. Instead, Defendants sought, *inter alia,* approval to increase the shares *authorized* for issuance under the 2004 Equity Incentive Plan. The question therefore, as posed by Mr. Unterberg, boils down to whether a proxy statement seeking authorization for issuance of more stock options, rather than authorization of actual grant of options, is related enough to constitute a communication "with respect to" the sale of securities of an issuer.

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Resolution of this issue turns on the phrase "with respect to" as used in the second Delaware carve-out. There is no case law addressing the interpretation of "with respect to," but there are cases addressing the interpretation of the similar phrase "in connection with" (as used in SLUSA), and neither party has pointed to any provision in SLUSA, its legislative history, or case law suggesting that Congress's use of the two different phrases was intended to imply a difference in scope. Certainly there is nothing obvious or inherent in the plain meaning of these phrases that would so suggest. Accordingly, the Court finds the construction of the phrase "in connection with" given by the Supreme Court and the Ninth Circuit persuasive in interpreting "with respect to." FN2

FN2. While it may be argued that the policy of applying SLUSA broadly could imply the threshold requisites for SLUSA should be more liberally construed than the carve-out, there is a countervailing concern, apparently reflected in the Delaware carve-out, that the legislation should not be construed so as to foster the federalization of corporate law. *Cf. Ketchum v. Green,* 557 F.2d 1022, 1029 (3d Cir.1977). In any event, Mr. Unterberg has failed to cite any authority for imparting different definitions here.

In *Merrill Lynch,* the Supreme Court held that, in determining whether an alleged fraud is "in connection with" a purchase or sale of securities so as to trigger the application of SLUSA, "it is enough that the fraud alleged 'coincide' with a securities transaction." *Merrill Lynch,* 126 S.Ct. at 1513. The Ninth Circuit has similarly held that, pursuant to SLUSA, a fraud is "in connection with" a securities transaction if it "coincides" with the transaction or is "more than tangentially related." *Falkowski,* 309 F.3d at 1130-1131.

In *Falkowski,* the Ninth Circuit held that state law fraud claims relating to employee stock options were preempted by SLUSA because the alleged fraud took place "in connection with the purchase or sale of a covered security." *See Falkowski,* 309 F.3d at 1126. The court explained first that the granting of a stock option is a "purchase or sale" of a security for purposes of SLUSA: "The option is a contractual duty to sell security at a later date for a sum of money, should the employee choose to buy it out. Whether or not the employee ever exercises the option, it is a 'sale' under Congress's definition. " *Id.* at 1130. The court then concluded that the alleged fraud was sufficiently related to the contract to sell stock to meet the "in connection with" requirement.

***5** The claim that defendant concealed [an] impending accounting write-off sufficiently alleges fraud "in connection" with a contract to sell [company] shares because it involves a misrepresentation about the value of the options. The claim that defendants concealed their plan to force early exercise of the options is also sufficient because it relates to the time period during which the Employees could exercise their rights to purchase. These allegations both "coincide" with the securities transaction and area easily characterized as having "more than some tangential relation to" the securities themselves.

*Id.* at 1131.

While the Ninth Circuit has not further elaborated on what constitutes "more than tangentially related," it has held-consistent with *Merrill Lynch*-that the meaning of "in connection with" in the context of § 10(b) and Rule 10b-5 claims is instructive in construing SLUSA. *See id.* at 1129; *see also Merrill Lynch,* 126 S.Ct. at 1513 (looking to how the Supreme Court has construed "in connection with" in the § 10(b) and 10b-5 context); *Sofonia v. Principal Life Ins. Co.,* 465 F.3d 873, 877-78 (8th Cir.2006) ("constru[ing] the phrase 'in connection with the purchase or sale of a covered security' as used in SLUSA by looking to interpretations of identical language used in § 10(b) of the Securities Exchange Act of 1934 and in Securities and Exchange Commission (SEC) Rule 10b-5"); *Strigliabotti v. Franklin Res., Inc.,* 398 F.Supp.2d 1094, 1100 (N.D.Cal.2005) (taking note of the above standard in *Falkowski* and also noting that, in a case dealing with § 10(b) and 10b-5 claims, the Supreme Court concluded that there is a connection between an alleged fraud and a securities

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

transaction where the fraudulent scheme and securities transaction " 'coincide' "). Thus, cases which address the "in connection with" requirement of § 10(b) and Rule 10(b)-5 are illuminating to the issue at bar.

In *In re Financial Corporation of America Shareholder Litigation,* 796 F.2d 1126 (9th Cir.1986), the Ninth Circuit held that, in the context of § 10(b),

[o]ne factor to be considered in determining whether the "in connection with" requirement has been met is whether a causal connection between the fraud and the transaction has been shown. *Boffo v. Graddick,* 742 F.2d 592, 596 (11th Cir.1984) ( *citing Ketchum v. Green,* 557 F.2d 1022, 1025-30 (3d Cir.), *cert. denied,* 434 U.S. 940, 98 S.Ct. 431, 54 L.Ed.2d 300 (1977). This "transactional nexus requirement is a species of causation [in fact]. Consistent with § 10(b)'s 'in connection with' limitation on liability, it prohibits claims based on the extremely attenuated links between plaintiff's injury and defendant's conduct [as alleged]." *Hudson v. Capital Management International, Inc.,* 565 F.Supp. 615, 622 (N.D.Cal.1983).

*Id.* at 1130.

In *Ketchum,* cited by the Ninth Circuit, the Third Circuit amplified the analysis of the nexus required to satisfy the "in connection with" requirement, holding that the "connection" element of § 10(b) concerns "the degree of proximity" between the securities transaction and the claimed fraud. *Ketchum,* 557 F.2d at 1028. The court gave as an example the "fairly tight linkage" in the Supreme Court's decision in *Superintendent of Insurance v. Bankers Life and Casualty Co.,* 404 U.S. 6, 92 S.Ct. 165, 30 L.Ed.2d 128 (1971), where the misrepresentation "was only one step removed" from the bond transaction and the transaction was " undertaken for the purpose of making possible the practices alleged to be deceptive." *Ketchum,* 557 F.2d at 1028.

***6** Here, there is more than a "tangential" relationship between Defendants' allegedly fraudulent communications to shareholders and the prospective sale of securities at issue (*i.e.,* stock option grants).FN3 *Falkowski,* 309 F.3d at 1130-31. The authorization sought by the allegedly misleading proxy statement has a "transactional nexus" with any further option grants. *In re Financial Corp. of Am. Shareholder Litig.,* 796 F.2d at 1130. The shareholder authorization was a necessary predicate to any further grants of backdated options, options contemplated by the complaint.FN4 The complaint fairly implies the purpose of the misleading proxy solicitation was to facilitate further backdated options. There is thus clear causal connection between the proxy statement and the anticipated transaction.

FN3. Although not briefed by either party, the fact that the allegedly misleading communication concerned past sale of securities (backdated options granted in 1996-2003) makes this case somewhat unique. Plaintiff alleges that these misleading disclosures and omissions about these grants were "essential links" in obtaining shareholder approval. It could therefore be argued that, at least *retrospectively,* the misleading proxy solicitation literally constituted a " communication with respect to the sale of securities" which was made by the issuer to shareholders and which concerned shareholder decisions with respect to voting their securities. However, in light of the Court's holding herein, this issue need not be resolved.

FN4. The complaint alleges that the Board is controlled by Defendants, *see* Compl. ¶ 71, and that Defendants "improperly extracted from the public shareholders a portion of the economic value and voting power of the public shareholder's shares and redistributed the economic value and voting power to themselves and to the EFI employees under their control." *Id.* ¶ 19. The complaint seeks a preliminary and permanent injunction barring issuance of any shares of common stock pursuant to the exercise of backdated options or the granting of any options under the 2004

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

> Equity Incentive Plan. *See id.* ¶ 113. The complaint thus fairly implies the proxy solicitation intended to facilitate further grants of improper stock options. *See Fed. Ins. Co. v. Tyco Int'l Ltd.*, 422 F.Supp.2d 357, 391 (S.D.N.Y.2006) ("When considering a motion to remand, the district court accepts as true all relevant allegations contained in the complaint and construes all factual ambiguities in favor of the plaintiff."); *Jamison v. Purdue Pharma Co.*, 251 F.Supp.2d 1315, 1318 (S.D.Miss.2003) ("When considering a motion to remand the district court accepts as true all relevant allegations contained in the complaint and construes all factual ambiguities in favor of the plaintiff."); *Clancy v. Bay Area Bank*, Nos. C97-0077 FMS, C96-4376 FMS, 1997 U.S. Dist. LEXIS 4914, at *9 (N.D.Cal. Apr. 7, 1997) ("Because a motion to remand is analogous to a motion to dismiss, the Court accepts the allegations of plaintiff's complaint as true.").

Moreover, there is a high degree of proximity in the causal chain. Defendants would not need to make any further communications with shareholders before granting the options: no further shareholder approval is necessary once the authorization was obtained. The proxy statement was the last necessary "communication with respect to the sale of securities" which concerns "decision of such equity holders with respect to voting their securities. " *Compare Superintendent of Ins. v. Bankers Life & Casualty Co.*, 404 U.S. 6, 92 S.Ct. 165, 30 L.Ed.2d 128 (1971) (case in which the misrepresentation in obtaining shareholder authorization was only one step away from the granting of the options), *with Ketchum*, 557 F.2d at 1028 (noting that "there are a substantial number of intermediate steps between the fraud and the accomplishment of the forced sale of plaintiffs' shares: the shareholders' vote subsequent to the misrepresentation; the ensuing meeting of the company directorate during which the plaintiffs were removed as officers; and the adoption of the resolution terminating the plaintiffs' status as company employees."). *See also Brown v. Ivie*, 661 F.2d 62, 65-66 (5th Cir.1981) (finding causal connection where defendants fraudulently induced plaintiff to sign agreement requiring him to sell stock at less than fair value upon termination and where, after obtaining agreement, defendants terminated plaintiff); *Dalicandro v. Legalgard, Inc.*, No. 99-3778, 2000 U.S. Dist. LEXIS 3089, at *8-9 (E.D.Pa. Mar. 16, 2000) (finding a sufficient connection where there was only one intermediate step between the fraud and the sale of stock).

The Court notes that, at the hearing on the motion to remand, it asked the parties to comment on the relevance of *Wilson v. First Houston Inv. Corp.*, 566 F.2d 1235 (5th Cir.1978). There, the plaintiff filed a 10b-5 suit against his investment advisor, arguing that the transfer of control over his stock portfolio to the advisor satisfied the requirement that the alleged fraud be "in connection with the purchase and sale of securities." The Fifth Circuit concluded that "any purchase and sale which took place incident to this arrangement was too remote to satisfy the 'in connection with the purchase and sale ' requirement as contemplated by *Blue Chip Stamps v. Manor Drug Stores*, 421 U.S. 723, 95 S.Ct. 1917, 44 L.Ed.2d 539 (1975)." *Id.* at 1243. Given *Wilson*, it could be argued that, in the instant case, the mere authorization for issuance of more stock options is too remote or speculative to satisfy the requirement that the recommendation, position, or communication be "with respect to the sale of securities."

*7 The Court, however, finds *Wilson* inapposite. First, *Wilson* is in tension with the more recent Supreme Court decision *Merrill Lynch* and its progeny which have construed "in connection with." Also, at least one district court has found *Wilson* unconvincing because it does not contain a substantive analysis of the required "connection" for a 10b-5 claim. *See In re Catanella & E.F. Hutton & Co., Sec. Litigation*, 583 F.Supp. 1388, 1411 & n. 32 (E.D.Pa.1984) ("Without analysis, the [*Wilson* ] court simply declared the fraud too remote from the transactions. Thus, *Wilson* lends little guidance."). More important, *Wilson* is factually distinguishable. In contrast to the general transfer of authority at issue in *Wilson*, here, it is alleged that the proxy solicitation was directly related to the option grants: shareholder

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

authorization was a necessary predicate to further option grants and was intended to facilitate such grants, and it was only one step away from any further grants. *See also Ambassador Hotel v. Wei-Chuan Inv.,* 189 F.3d 1017 (9th Cir.1999) (finding a sufficient connection where the fraudulent solicitation concerned a joint venture agreement that did not mention stock but gave the newly formed corporation the ability to later issue stock).

Accordingly, the Court concludes that Mr. Unterberg's attempt to remove pursuant to SLUSA was not justified because Plaintiff's class action falls within the scope of the second Delaware carve-out.

B. *28 U.S.C. § 1441(b)*

Although the Court concludes that removal pursuant to SLUSA was not warranted, Mr. Unterberg has articulated another basis for removal pursuant to 28 U.S.C. § 1441(b).

There is no dispute that Plaintiff could have filed suit in federal court based on diversity jurisdiction. Plaintiff is a citizen of Michigan and none of the Defendants are citizens of Michigan. Plaintiff, however, chose to file suit in state court. The question is whether removal under 28 U.S.C. § 1441(b) is proper.

Under 28 U.S.C. § 1441(b), a case in which the parties are completely diverse "shall be removable only if none of the parties in interest properly joined and served as defendants is a citizen of the State in which such action is brought." 28 U.S.C. § 1441(b). Thus, in the instant case, if any Defendant who is properly joined and served were a citizen of California, the case would not be removed. The parties agree that at least some of the Defendants in this case-including nominal Defendant EFI-are citizens of California. However, none of these California Defendants had been served at the time of removal. Mr. Unterberg argues, therefore, that removal is proper because he is the only Defendant served (by virtue of his entering a general appearance) in the case, and he is not a citizen of California.

Plaintiff asserts that the strict language of § 1441(b) should not be applied to the instant case because doing so would not serve the purpose of § 1441(b) and in fact would reward gamesmanship on the part of Mr. Unterberg and the other Defendants. Plaintiff relies on *Holmstrom v. Harad,* No. 05 C 2714, 2005 U.S. Dist. LEXIS 16694 (N.D.Ill. Aug. 11, 2005) in which the district court explained:

***8** The purpose of the 'joined and served' requirement is to prevent a plaintiff from blocking removal by joining as a defendant a resident party *against whom it does not intend to proceed,* and whom it does not even serve. Defendants are entitled to act to remove a case based on circumstances at the time they are sued, and are not required to guess whether a named resident defendant will ever be served.

*Id.* at *6 (emphasis added).

In the instant case, there is no dispute that all of the California Defendants named in the case are parties against whom Plaintiff does intend to proceed. Indeed, for the derivative suit, Plaintiff must proceed against EFI, a citizen of California. As in *Holmstrom,* the apparent purpose of the "joined and served" requirement is not served here. In fact, Mr. Unterberg, not Plaintiff, engaged in gamesmanship by acting preemptively to remove before Plaintiff effectuated service on the California Defendants (in particular, EFI). The gamesmanship by the Defendants, according to Plaintiff, is especially clear from the fact that, in one of the cases which was related to the instant case, *see* Case No. 06-7274, *all* of the California Defendants made appearances, not just Mr. Unterberg, even though the same counsel represents those Defendants as well as Mr. Unterberg. The decision to have only Mr. Unterberg enter an appearance in this case was deliberate.

Plaintiff's argument is not without merit-indeed, has a great deal of appeal. The difficulty for Plaintiff is that the language of § 1441(b) is clear, and a court may depart from the plain language of a statute only under "rare and exceptional circumstances." *Demarest v. Manspeaker,* 498 U.S. 184, 190, 111 S.Ct. 599, 112 L.Ed.2d 608, (1991) ("When we find the terms of a statute unambiguous, judicial inquiry

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

is complete except in rare and exceptional circumstances."), *superseded by statutory amendment on other grounds,* 28 U.S.C.A. § 1821. A court "look[s] beyond the express language of a statute where a literal interpretation would thwart the purpose of the overall statutory scheme or lead to an absurd or futile result." *Albertson's, Inc. v. Commissioner of Internal Revenue,* 42 F.3d 537, 545 (9th Cir.1994) (internal quotation marks omitted).

The Court cannot say that, in the instant case, strict adherence to the language of § 1441(b) would lead to absurd or futile results. Plaintiff suggests that rewarding Mr. Unterberg's gamesmanship would render an absurd result. However, the Court notes that the gamesmanship of Mr. Unterberg is somewhat overstated. Mr. Unterberg did not make a general appearance and remove the case to federal court until approximately two weeks after Plaintiff filed the complaint. Plaintiff therefore had an opportunity to serve the complaint on any of the California Defendants, including the corporate defendants. Plaintiff should have been cognizant of the fact that a nonresident defendant could remove a case without having been served. *See Delgado v. Shell Oil Co.,* 231 F.3d 165, 177 (5th Cir.2000) (" Generally, service of process is not an absolute prerequisite to removal.").

*9 Plaintiff points out that, "even when the plain meaning did not produce absurd results but merely an unreasonable one 'plainly at variance with the policy of the legislation as a whole,' [the Supreme Court] has followed that purpose, rather than the literal words." *United States v. American Trucking Ass'ns,* 310 U.S. 534, 543, 60 S.Ct. 1059, 84 L.Ed. 1345 (1940) (finding that a literal interpretation of the Motor Carrier Act would give the Commission power to make employment decisions that were broader than intended by Congress); *see also Albertson's.,* 42 F.3d at 537. Even under the *American Trucking* standard, the Court cannot conclude that strict adherence to the language of § 1441(b) would be plainly at variance with the policy behind the statute. While *Holmstrom* articulates a logical analysis of the purpose of the joined and served requirement, if Congress had wanted to ensure that removal would not be appropriate until it was clear that Plaintiff was trying to prevent removal by speciously naming resident defendants, Congress could have provided that no removal petition could be filed until one or more nonresident defendant had been joined and served. The statute also could have been written to give a plaintiff, *e.g.,* 30 or 60 days to effect service before permitting a defendant to remove. In any event, Plaintiff has not cited anything in the legislative history of § 1441(b) to support its assertion that the plain language of the statute should be disregarded. And, significantly, *Holmstrom's* decision to disregard the plain language of § 1441(b) has been disapproved by other courts. *See Massey v. Cassens & Sons, Inc.,* No. 05-CV-598-DRH, 2006 U.S. Dist. LEXIS 9675, at *10 (S.D.Ill. Feb. 16, 2006) ("While an argument can be made that the likely policy underlying the 'joined-and-served' requirement is not implicated by the current facts, the Court is constrained by the language of 28 U.S.C. § 1441. That language is clear and unambiguous: where complete diversity is present-as it is in this case-only the presence of a 'joined-and-served' resident defendant defeats removal."); *see also Davis v. Cash,* No. 3:01-CV-1037-H, 2001 U.S. Dist. LEXIS 15546 (N.D.Tex. Sept. 27, 2001) (granting removal where individual nonresident defendant entered a general appearance by filing an answer before any defendants had been served).

Finally, whether Mr. Unterberg had been "served" by virtue of his voluntary general appearance in state court, Cal.Code Civ. Proc. § 410.50(a) (providing that "[a] general appearance by a party is equivalent to personal service of summons on such party"), is immaterial. Procedurally, Mr. Unterberg could remove whether or not he had been "served." *See Delgado,* 231 F.3d at 177 (5th Cir.2000) (" Generally, service of process is not an absolute prerequisite to removal."); *Massey,* 2006 U.S. Dist. LEXIS 9675, at *6 ("Nothing in 28 U.S.C. § 1441 or any other statute requires defendants to have been served themselves prior to removing a case to federal court"). Substantively, § 1441(b)'s "joined and served" requirement focuses on resident defendants, not nonresident defendants like Mr. Unterberg.

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

***10** Accordingly, the Court, constrained by the plain language of § 1441(b), concludes that removal by Mr. Unterberg was appropriate.

C. *Attorney Fees and Costs*

Because the Court denies Plaintiff's motion to remand, Plaintiff's request for attorney fees and costs is likewise denied.

**III. *CONCLUSION***

For the foregoing reasons, the Court concludes that removal pursuant to SLUSA was not appropriate but that removal pursuant to § 1441(b) was proper. Accordingly, Plaintiff's motion to remand is denied.

This order disposes of Docket No. 7.

IT IS SO ORDERED.

N.D.Cal.,2007.
City of Ann Arbor Employees' Retirement System v. Gecht
Slip Copy, 2007 WL 760568 (N.D.Cal.)

END OF DOCUMENT

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

# E

1 of 1 DOCUMENT

**MACARIA CALMO PEREZ; and SANTOS M. CALMO, a minor; BONIFACIO E. CALMO, a minor; ELIZABETH M. CALMO, a minor; by and through their Guardian ad Litem JEFFREY MILES BRYANT, Plaintiffs, v. JOHN MCNAMEE; MORBARK, INC., a Corporation; EDWIN DISSOSWAY; NANCY PUZZIFERRI and DOES 1 through 500, Defendants.**

**No. C 06-5031 CW**

**UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF CALIFORNIA**

***2006 U.S. Dist. LEXIS 89820***

**November 30, 2006, Decided**
**November 30, 2006, Filed**

**COUNSEL:** [*1] For Macaria Calmo Perez, Santos M. Calmo, Bonifacio E. Calmo, Elizabeth M. Calmo Calmo, Alisandra V. Calmo, Jeffrey Miles Bryant, by and through their Guardian ad Litem, Plaintiffs: John E. Hill, Daniel Alvin Stenson, Law Offices of John E. Hill, Oakland, CA.

For John McNamee, doing business as A&M Tree Service, Defendant: James Mills, Law Office of James Mills, Oakland, CA.

For Morbark, inc., a corporation, Defendant: Duane Clark Musfelt, Lewis Brisbois Bisgaard Smith LLP, San Francisco, CA.; Kevin Dougherty, Warner Norcross & Judd LLP, Grand Rapids, MI.; Marisa Yee, Lewis Brisbois et al, San Francisco, CA.

For Edwin Dissosway, Nancy Puzziferri, Defendants: Lawrence A. Baker, Buresh, Kaplan, Jang & Feller, Berkeley, CA.

Nancy Puzziferri, Edwin Dissosway, Cross-claimants.

For John McNamee, Cross-defendant: James Mills, Law Office of James Mills, Oakland, CA.

For Morbark, inc., a corporation, Cross-defendant: Duane Clark Musfelt, Lewis Brisbois Bisgaard Smith LLP, San Francisco, CA.

For John McNamee, Cross-claimant: James Mills, Law Office of James Mills, Oakland, CA.

Morbark, inc., a corporation, Cross-defendant.

**JUDGES:** CLAUDIA WILKEN, United States [*2] District Judge.

**OPINION BY:** CLAUDIA WILKEN

**OPINION:**

ORDER DENYING MOTION TO REMAND

Plaintiffs move to remand this removed action to State court and request attorneys' fees under *28 U.S.C. § 1447(c)*. Defendant Morbark filed an opposition, in which the other named Defendants join. n1 The matter was decided on the papers. Having considered the parties' papers, the Court DENIES Plaintiffs' motion.

n1 Because the Court need not consider Defendant John McNamee's joinder in Morbark's opposition or James Mills' declaration in support of the opposition in deciding this motion, Plaintiffs' objection to them is overruled as moot. (Docket No. 43).

BACKGROUND

Plaintiffs are the surviving spouse and children of Norberto Garcia. They are residents and citizens of Guatemala. Garcia suffered fatal injuries on January 17, 2005, while operating a wood chipper manufactured by Defendant Morbark, Inc., a corporation incorporated and with its principal place of business in Michigan. Garcia was working for Defendant John [*3] McNamee, an unlicensed contractor, at the time of the incident. McNamee is a resident of California. McNamee had been hired to do work at the property of Defendants

Edwin Dissosway and Nancy Puzziferri, where the incident occurred. Defendants allege that Dissosway and Puzziferri are residents of Texas. Plaintiffs alleged in their complaint that Dissosway and Puzziferri are residents of California but now appear to concede that these defendants are not California residents as Plaintiffs originally believed. See Reply at 2.

Plaintiffs filed a wrongful death claim in Alameda County Superior Court on April 19, 2006, but did not serve this complaint on any of the defendants. On July 28, 2006, they filed their first amended complaint which named Morbark, Dissosway, Puzziferri, McNamee and Does 1-500 as defendants. Morbark was served with the first amended complaint on or about August 1, 2006. On August 21, Morbark filed a notice of removal pursuant to *28 U.S.C. § 1441* and *28 U.S.C. § 1332*.

Attached to the notice of removal was a letter from counsel for Defendants Dissosway and Puzziferri, addressed to counsel for Morbark, indicating that [*4] they did not object to Morbark filing the notice. Also attached was a letter, dated August 21, 2005, from McNamee's counsel, James Mills, stating that his client "consents" to Morbark's removal of the case. Morbark Notice of Removal Exhibit D. At the time Morbark filed the notice, none of the other defendants had been served. On September 7, 2006, over two weeks after the notice of removal was filed by Morbark, Plaintiffs' counsel delivered the first amended complaint to Mills with a waiver of service form. Plaintiffs' Exhibit A. Plaintiffs state that they did this because Mills, who represented McNamee in a related workers compensation case brought by Plaintiffs, instructed that all communication and documents were to be directed to Mills.

LEGAL STANDARD

A defendant may remove a civil action filed in State court to federal district court so long as the district court could have exercised original jurisdiction over the matter. *28 U.S.C. § 1441(a)*. The defendant must file a notice of removal within thirty days of being served with the initial pleading or summons. *28 U.S.C. § 1446(b)*. "The 'strong presumption' against removal jurisdiction [*5] means that the defendant always has the burden of establishing that removal is proper." *Gaus v. Miles, Inc., 980 F.2d 564, 566 (9th Cir. 1992)*.

District courts have original jurisdiction over all civil actions "where the matter in controversy exceeds the sum or value of $ 75,000, exclusive of interest and costs, and is between ... citizens of different States." *28 U.S.C. § 1332(a)*. However, any civil action of which the district courts have original jurisdiction founded on diversity "shall be removable only if none of the parties in interest properly joined and served as defendants is a citizen of the State in which such action is brought." *28 U.S.C. § 1441(b)*.

On granting a motion to remand, the court may order the defendant to pay the plaintiff its "just costs and any actual expenses, including attorney fees, incurred as a result of the removal." *28 U.S.C. § 1447(c)*. The district court is given "wide discretion" by *§ 1447(c)* to determine whether to award fees. *Moore v. Permanente Med. Group, Inc., 981 F.2d 443, 447 (9th Cir. 1992)*; see also *Gotro v. R. & B. Realty Group, 69 F.3d 1485, 1487 (9th Cir. 1995)*. [*6]

DISCUSSION

Plaintiffs do not dispute that the Court has original jurisdiction based on diversity of citizenship. Rather, Plaintiffs argue that Defendant McNamee was a properly joined party at the time the notice of removal was filed, and therefore that removal was improper under *28 U.S.C. § 1441(b)* because he is a citizen of the forum State.

Defendants counter that, because McNamee had not been served at the time the case was removed, the fact that he is a resident of the forum State should be ignored for purposes of removability. Plaintiffs reply (1) that the statutory language requiring that the resident defendant be served in order to prevent removal should not be strictly applied in this case and (2) that McNamee's counsel's letter indicating that he consented to removal of the case constituted an appearance in the case and, therefore, he waived service prior to removal.

Plaintiffs claim that the language in *§ 1441(b)* should not always be strictly applied, citing *Holmstrom v. Harad, 2005 U.S. Dist. LEXIS 16694 (N.D. Ill. 2005)*. In Holstrom, a Northern District of Illinois court adopted a Texas district court's limited rule ignoring [*7] the lack of service of the resident defendant "where no defendant had been served prior to removal." *2005 U.S. Dist. LEXIS at *5*. In adopting that rule, the Illinois court noted that "'[t]he purpose of the 'joined and served' requirement is to prevent a plaintiff from blocking removal by joining as a defendant a resident party against whom it does not intend to proceed, and whom it does not even serve." *Id. 2005 U.S. Dist. LEXIS 16694 at *6*. The plaintiff could then dismiss its claims against the resident defendant after the non-resident's thirty-day period for removal had elapsed. n2 Accordingly, the court found that "the protection afforded by the 'joined and served' requirement is wholly unneccessary for an unserved non-forum defendant" because the thirty-day period for removal had not yet begun to run nor had any defendant been required to appear in court. *Id. 2005 U.S. Dist. LEXIS 16694 at *6-*7*.

n2 Under *28 U.S.C. § 1446(b)*, a defendant must file its notice of removal within thirty days of service.

Plaintiffs equate what they [*8] term the unserved defendant's "preemptive strike" in Holstrom to the situation in the present case "where efforts to effect service upon all defendants were underway and one defendant simply responds more quickly that the others." Plaintiffs' Memorandum of Points and Authorities at 8. Plaintiffs also note that they were in compliance with California Rule of Court 201.7(b), which requires plaintiffs to file a proof of service on each defendant within sixty days from the filing of a complaint.

However, Plaintiffs fail to acknowledge that Defendant Morbark was bound by the thirty-day period to file a notice of removal. Morbark did not file its notice of removal until August 21, three weeks after it was served with the amended complaint and well into its thirty-day period to file for removal. Further, Plaintiffs did not deliver the first amended complaint and the request for waiver of service to McNamee's counsel until September 7, over two weeks after the notice of removal was filed. The Court finds that, as in *Republic Western Insurance Co. v. International Insurance Co., 765 F. Supp. 628, 629 (N.D. Cal. 1991)*, "the language of *§ 1441(b)* mandates the finding that [*9] this case was properly removed."

In support of their second argument, that even if McNamee was not served at the time the removal was noticed, he waived service when his counsel wrote to Morbark's counsel consenting to the removal on his behalf, Plaintiffs cite *RCA Corp. v. Superior Court, 47 Cal. App. 3d 1007, 121 Cal. Rptr. 441 (1975)*. In that case, the defendant filed a motion to dismiss the action after the plaintiff failed to file the return of service within three years as required by California law. *Id. at 1009-1010.* The court found that the parties' unfiled stipulation extending the time for defendant to appear in the case constituted an appearance by the defendant in the case. *Id. at 1010.* In reaching that conclusion, the court noted that an appearance can "be express or arise by implication from the defendant's seeking, taking, or agreeing to some step or proceeding in the cause beneficial to himself or detrimental to the plaintiff, other than one contesting the jurisdiction only." *Id. at 1009* (internal quotation omitted).

However, in *RCA*, the defendant clearly took a step beneficial to itself and potentially detrimental [*10] to the plaintiff when it allowed itself more time to respond to the plaintiff's complaint. Here, McNamee's action is ambiguous. The document in question is a letter from his attorney to Morbark's attorney, not a stipulation between McNamee and Plaintiffs, and it is not clear that the consent to Morbark's notice of removal was intended to benefit McNamee or to be detrimental to Plaintiffs. Rather, the action was taken to benefit Morbark, the only Defendant served at the time.

Further, as Defendants point out, McNamee's letter is more analogous to the affidavit filed in support of a co-defendant's motion for change of venue that was not considered an appearance in *Slaybaugh v. Superior Court of Santa Clara County, 70 Cal. App. 3d 216, 138 Cal. Rptr. 628 (1977)*. There, the court noted, "It is not every affidavit or appearance as a witness which will render one an appearing party to an action" and pointed out that Slaybaugh had "filed no pleading" in the case. *Id. at 223-24.* Although McNamee arguably acted more as a potential party than as a witness in the present case by noting his assent to another party's action than did the defendant in Slaybaugh by simply stating [*11] his residence, it is clear that McNamee had not filed any pleadings in the case at the time of the notice of removal.

The Court finds that the letter from McNamee's counsel to Morbark's counsel was not a general appearance. Therefore, McNamee was not a properly joined and served party at the time of the notice of removal. Because the Court finds that the notice of removal was proper and that McNamee had not been served at the time of the notice, it need not reach Defendants' alternative argument that McNamee was fraudulently joined.

CONCLUSION

For the foregoing reasons, the Court denies Plaintiffs' motion to remand the action to State court (Docket No. 26). Plaintiffs' motion for attorneys' fees pursuant to *28 U.S.C. § 1447(c)* is consequently denied. A case management conference will be held on December 15, 2006 at 1:30 p.m. The parties shall file a joint case management statement one week prior to this date.

IT IS SO ORDERED.

Dated: 11/30/06

CLAUDIA WILKEN

United States District Judge

# F

**H**
Frick v. Novartis Pharmaceuticals Corp.
D.N.J.,2006.
Only the Westlaw citation is currently available.NOT FOR PUBLICATION
United States District Court,D. New Jersey.
Bernice FRICK, Plaintiff,
v.
NOVARTIS PHARMACEUTICALS CORP., et. al Defendants.
**No. Civ. 05-5429(DRD).**

Feb. 23, 2006.

Gregory S. Spizer, Anapol, Schwartz, Weiss, Cohan, Feldman & Smalley, P.C., Cherry Hill New Jersey, for Plaintiff.
Diane E. Lifton, Gibbons, Del Deo, Dolan Griffinger & Vecchione, P.C., Newark, New Jersey, for Defendant Novartis Pharmaceuticals.

OPINION
DEBEVOISE, Senior District Judge

I. *PROCEDURAL HISTORY & BACKGROUND*

*1 On October 31, 2005 Plaintiff, Bernice Frick, filed this personal injury action in the Superior Court of New Jersey, Morris County, against Defendant, Novartis Pharmaceuticals Corporation ("Novartis") and various unnamed defendants, claiming she sustained injuries from ingesting a prescription medication manufactured by Novartis. On November 15, 2005, having learned of this action before it was served with the complaint, Novartis filed a Notice of Removal, thereby removing the matter to this court. Plaintiff served Novartis on December 2, 2005. Plaintiff now moves to remand the matter to the Superior Court.

Plaintiff is a citizen of Pennsylvania and Novartis is a citizen of New Jersey.

II. *DISCUSSION*

Upon a motion to remand, the removing party bears the burden of demonstrating that removal was proper. *See Boyer v. Snap-On Tools Corp.*, 913 F.2d 108, 111 (3d Cir.1990). Removal statutes are strictly construed in favor of remand. *See Steel Valley Auth. v. Union Switch & Signal Div.*, 809 F.2d 1006, 1010 (3d Cir.1987).

28 U.S.C. § 1441(a) states that "any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant" "[e]xcept as otherwise provided by Act of Congress...." In the present case, the district court has original jurisdiction because there is diversity of citizenship between the parties. Therefore, the defendant may remove the matter unless prohibited by a contrary Act of Congress. 28 U.S.C. § 1441(b) provides that civil actions in which there is diversity of citizenship between the parties "shall be removable only if none of the parties in interest properly joined and served as defendants is a citizen of the State in which such action is brought." In the present case Novartis is a citizen of the forum state but it was not properly joined and served when it filed its notice of removal. Thus, under the plain language of the statute, Novartis is entitled to removal.

However, Plaintiff contends that the "properly joined and served" requirement only makes sense when one defendant has been served but the named forum defendant has not, because in such situations the plaintiff could prevent removal by naming but not serving the forum defendant. Thus, Plaintiff argues, that requirement should not apply to the present case.

Plaintiff cites two cases to support that argument, *Recognition Commc'n, Inc. v. Am. Auto. Ass'n, Inc.*, No. 97-0945, 1998 U.S. Dist. LEXIS 3010 (N.D.Tex. Mar. 4, 1998) and *Holmstrom v. Harad*, No. 05-2714, 2005 U.S. Dist LEXIS 16694

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

(N.D.Ill. Aug. 11, 2005).

In *Recognition Commc'n, Inc.*, the court granted the plaintiff's motion to remand after three of the four defendants filed a notice of removal. In that case there was diversity of citizenship between the parties but one of the defendants, the only one who did not join in the notice of removal, was a citizen of the forum state. None of the four defendants had been served when the notice of removal was filed. 1998 U.S. Dist. LEXIS 3010, at *1-3.

***2** The court found that removal was improper because "all of the Defendants should have participated in the Notice of Removal." *Id* . at *8. In reaching that conclusion the court observed that had one of the non-resident defendants been served, that defendant could have removed the matter without the participation of the other defendants in the notice of removal and "regardless of the presence of a resident defendant." *Id.* at *8 n. 3. However, since none of the defendants had been served, the court found that all of the defendants had to join the removal petition.

The holding in *Recognition Commc'n, Inc.* offers little support for Plaintiff's motion to remand because in that case, the court granted the plaintiff's motion based on a procedural defect that does not exist here. In the present case, Novartis is the only named defendant. Thus, there is no requirement that any other party join the notice of removal.

In *Holmstrom,* the court cites the opinion in *Recognition Commc'n, Inc.* as the only opinion to address the issue of "whether, under § 1441(b), the citizenship of a forum defendant defeats removal when, prior to removal, no defendant has been served or otherwise appeared." *Holmstrom,* 2005 U.S. Dist LEXIS 16694, at *4. The *Holmstrom* court notes that, in general, the citizenship of an unserved forum defendant should be disregarded when determining removability. However, it interprets *Recognition Commc'n, Inc.* as limiting that rule to situations in which one defendant has been served or otherwise appeared. Thus, the court in *Holmstrom* held that the "joined and served" requirement does not apply when no defendant has been served or otherwise appeared. *Holmstrom,* 2005 U.S. Dist LEXIS 16694, at *7.

This court disagrees with that interpretation of *Recognition Commc'n, Inc.* Although the *Recognition Commc'n, Inc.* opinion contains dicta that may support the *Holmstrom* decision, the holding in *Recognition Commc'n, Inc.* is based on the fact that one of the defendants in that case did not join the notice of removal. Therefore, that portion of the *Holmstrom* decision will not be followed in the present case.

However, the *Holmstrom* court also supports its decision with a policy argument. As it states, "the purpose of the 'joined and served' requirement is to prevent a plaintiff from blocking removal by joining as a defendant a resident party against whom it does not intend to proceed, and whom it does not even serve." *Holmstrom,* 2005 U.S. Dist LEXIS 16694, at *6 (internal quotations omitted). Thus, it states, "[t]he 'joined and served' requirement makes sense ... when one defendant has been served but the named forum defendant has not. " *Id.* On the other hand, it does not make sense when no defendant has been served. *Id.*

That argument, plausible as it may be, does not adhere to the literal language of the statute. The Third Circuit has held that when dealing with issues of statutory construction, the court's task is

> *3 to give effect to the will of Congress, and where its will has been expressed in reasonably plain terms, that language must ordinarily be regarded as conclusive. If the language of the statute is plain, the sole function of the court is to enforce the statute according to its terms. The plain meaning is conclusive, therefore, except in the rare cases in which the literal application of a statute will produce a result demonstrably at odds with the intentions of its drafters.

*Abdul-Akbar v. McKelvie,* 239 F.3d 307, 313 (3d Cir.2001) (citations and internal quotations omitted).

Although the *Holmstrom* court offers a plausible justification for its holding, we find that the language of the statute is unambiguous. Furthermore, it is not readily apparent that applying the clear language of the statute to the present case

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

would produce a result that is demonstrably at odds with the intentions of Congress. The *Holstrom* holding will not be followed and the plain language of the statute will control the present case. Therefore, Novartis is entitled to removal.

III. *CONCLUSION*

For the reasons set forth above, Plaintiff's motion to remand will be denied. The Court will enter an order implementing this opinion.

D.N.J.,2006.
Frick v. Novartis Pharmaceuticals Corp.
Not Reported in F.Supp.2d, 2006 WL 454360 (D.N.J.)

END OF DOCUMENT

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

# G

**STEPHEN D. MASSEY, Plaintiff, vs. CASSENS & SONS, INC.; CASSENS CORPORATION; UNKNOWN COMMERCIAL LESSORS IN THE CASSENS FAMILY; UNKNOWN TRAILER AND RATCHET COMPONENT DISTRIBUTORS/ MANUFACTURERS; NISSAN NORTH AMERICA, INC.; and GENERAL MOTORS CORPORATION, Defendants.**

**No. 05-CV-598-DRH**

**UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF ILLINOIS**

***2006 U.S. Dist. LEXIS 9675***

**February 16, 2006, Decided**

**SUBSEQUENT HISTORY:** Motion denied by *Massey v. Cassens & Sons, Inc., 2006 U.S. Dist. LEXIS 58991 (S.D. Ill., Aug. 21, 2006)*

**COUNSEL:** [*1] For Stephen D Massey, Plaintiff: Brian M. Wendler, Thomas G. Maag, Wendler & Ezra, Collinsville, IL.; Charles W. Armbruster, III, Lakin Law Firm, Wood River, IL.

For Cassens & Sons, Inc, Defendant: James A. Gottschalk, Law Offices of Donald Balfour, Chesterfield, MO.

For Cassens Corporation, Defendant: Gordon R. Broom, Burroughs, Hepler et al., Edwardsville, IL.; James A. Gottschalk, Law Offices of Donald Balfour, Chesterfield, MO.; Benjamin W. Powell, Burroughs, Hepler et al. - Edwardsville, Edwardsville, IL.

For Nissan North America Inc, Defendant: Reed W. Sugg, Sandberg, Phoenix et al. - St. Louis, St. Louis, MO.

For General Motors Corporation, Defendant: Philip L. Harris, Shannon P. Bartlett, Jenner & Block, LLC, Chicago, IL.

For Cottrell Inc, Defendant: Amy J. Lorenz-Moser, Bryan Cave - St. Louis, St. Louis, MO.

For KSC Leasing LLC, Defendant: Benjamin W. Powell, Burroughs, Hepler et al. - Edwardsville, Edwardsville, IL.

**JUDGES:** David RHerndon, United States District Judge.

**OPINION BY:** David R. Herndon

**OPINION**

**MEMORANDUM AND ORDER**

**HERNDON, District Judge:**

**I. Introduction**

Before the Court is a motion to remand submitted by Plaintiff [*2] Stephen D. Massey ("Plaintiff"). (Doc. 12.) Defendant General Motors Corporation ("GM"), one of several Defendants in this case, responds in opposition. (Doc. 26.) For the reasons below, the Court denies Plaintiff's motion.

**II. Background**

Plaintiff originally filed his seven-count complaint on August 11, 2005 in Madison County, Illinois Circuit Court, alleging that he suffered various injuries due to Defendants' conduct. (Doc. 2.) A week later, on August 18, 2005, GM removed this case based on diversity jurisdiction. ***28 U.S.C. § 1332***; (Doc. 1.) [1]

1 Plaintiff does not contest diversity jurisdiction. (Doc. 12.)

The current dispute centers on the question of whether GM's removal was proper. GM removed this case almost immediately after it was filed, before Plaintiff served any party, and despite the presence of two Defendants in this case -- Cassens & Sons and Cassens

Corporation -- that are citizens of Illinois, where this action was brought. (Docs. 1, 12, 26.) [2] Though [*3] GM notes ***28 U.S.C. § 1441(b)***'s language that removal is improper in diversity cases if a "joined and served" defendant "is a citizen of the State in which such action is brought," it argues that since neither Cassens & Sons nor Cassens Corporation was both joined and served at the time of removal, its removal was proper. (Doc. 26.) Plaintiff disagrees. From his perspective, GM's removal was improper both because GM removed prior to being served and because a case may not be removed where a resident defendant is a party -- served or unserved. (Doc. 12.) [3]

2 This type of lawyering is characteristic of this series of lawsuits over the years.

3 In this case, only one of GM's co-Defendants (Nissan North American) consented to removal. (Doc. 4.) Under a recognized exception to the general rule that consent is required among all defendants, however, unserved defendants need not consent to removal. ***Shaw v. Dow Brands, Inc.****, 994 F.2d 364, 369 (7th Cir. 1993)*; *P.P. Farmers Elevator Co. v. Farmers Elevator Mut. Ins. Co., 395 F.2d 546, 548 n.3 (7th Cir. 1968).*

**[*4] III. Analysis**

The federal removal statute, ***28 U.S.C. § 1441***, provides that a diversity action is removable if the requirements for diversity jurisdiction are met and "if none of the parties in interest properly joined and served as defendants is a citizen of the State in which such action is brought." ***28 U.S.C. § 1441(b)***. Thus, if a properly joined-and-served defendant resides in the state where an action is brought, that action may not be removed on diversity grounds. ***Id.*** This rule -- the so-called forum defendant rule -- "'reflects the belief that [federal] diversity jurisdiction is unnecessary because there is less reason to fear state court prejudice against the defendants if one or more of them is from the forum state." ***Spencer v. United States Dist. Ct., 393 F.3d 867, 870 (9th Cir. 2004)*** (quoting Erwin Chemerinsky, *Federal Jurisdiction* § 5.5 (4th ed. 2003)); *see also* 16 James Wm. Moore et al., *Moore's Federal Practice* P 107.14(2)(e)(i) (3d ed. 1999).

Here, Plaintiff advances two arguments in favor of remand: First, he argues that a defendant may not -- as GM [*5] has here -- remove a case prior to being served. Second, he argues that the presence of an unserved resident defendant forecloses removal. (Doc. 12.) [4]

4 It is worth noting that when removal jurisdiction is challenged, a court's jurisdiction is measured at the time of removal, and is not affected by subsequent events. *See* ***In re Shell Oil****,966 F.2d 1130, 1133 (7th Cir. 1992)* (citing ***St. Paul Mercury Indem. Co. v. Red Cab Co., 303 U.S. 283, 58 S. Ct. 586, 82 L. Ed. 845 (1938)).***

**A. Removal Before Service**

With regard to the first argument, as courts have recognized, nothing in ***28 U.S.C. § 1441*** or any other statute requires defendants to have been served themselves prior to removing a case to federal court. *See* ***28 U.S.C. § 1441***; ***Delgado v. Shell Oil, 231 F.3d 165, 177 (5th Cir. 2000)*** (holding that service of process is not a prerequisite to removal); ***Arthur v. Litton Loan Servicing****, 249 F. Supp. 2d 924 (E.D. Tenn. 2002)* [*6] **(Edgar, J.)** (same); ***Robinson v. Quality Ins. Co.****, 633 F. Supp. 572, 576 (S.D. Ala. 1986)* (Hand, J.) (same). In fact, at least one statute related to removal -- ***28 U.S.C. § 1446*** -- can be read to explicitly authorize the practice. *See* ***28 U.S.C. § 1446(b)*** (providing that removal is proper within thirty days of a defendant's receipt, "through service *or otherwise*," of the relevant pleading or other document (emphasis added)); *see also* ***28 U.S.C. § 1448*** (diminishing the significance of pre-removal service by providing that service may be completed after removal in cases "in which any one or more of the defendants has not been served with process or in which the service has not been perfected prior to removal, or in which process served proves to be defective"). Plaintiff cites no relevant authority suggesting that service is a prerequisite to removal. [5] Accordingly, the Court declines to require that a removing defendant have received service.

5 The cases Plaintiff cites in support of his argument are inapposite and do not address the question of whether service is required prior to removal. *See, e.g.,* ***MP III Holdings v. Hartford Cas. Ins. Co., No. 05-1569, 2005 U.S. Dist. LEXIS 10654, 2005 WL 1320127 (E.D. Pa. May 31, 2005) (Shapiro, J.)*** (addressing the question of whether a removal was filed too late); ***Piacente v. State Univ. of N.Y.****, 362 F. Supp. 2d 383, 385 (W.D.N.Y. 2004)* (Elfvin, J.) (same). A case Plaintiffs argument relies heavily on, for example, is ***Murphy Bros. v. Michetti Pipe Stringing****, 526 U.S. 344, 119 S. Ct. 1322, 143 L. Ed. 2d 448 (1999)*. There, the Supreme Court held that the thirty-day period in which a defendant could remove did not commence upon its mere receipt of the complaint. ***Murphy Bros., 526 U.S. at 350-51.*** The Court plainly did not hold, however, that service is a prerequisite for removal. Plaintiff's argument to the contrary is simply not grounded in ***Murphy Brothers***'s holding. ***Id.;*** *see also*

> ***Delgado v. Shell Oil**, 231 F.3d 165, 177 n.23 (5th Cir. 2000)* ("In [***Murphy Brothers***] the Supreme Court found that mere receipt of a complaint unattended by any formal service did not trigger a defendant's time to remove a case from state court. But the decision did not address whether service was a prerequisite for a defendant to be able to remove a case.").

**[*7] B. Removal in the Presence of an Unserved Resident Defendant**

With regard to Plaintiff's second argument, there is similarly nothing in ***28 U.S.C. § 1441*** barring removal in diversity cases when an unserved resident defendant is present. *See* ***28 U.S.C. § 1441.*** In fact, just the opposite: as that statute's language clearly provides, if diversity jurisdiction exists, only a "joined *and served*" resident defendant prevents bars removal. ***28 U.S.C. § 1441(b)*** (emphasis added). Under the statute's plain language, therefore, if a resident defendant is not both joined and served, the forum defendant rule does not apply. ***Id.*** This is the conclusion that has been reached "virtually uniformly" by federal courts. ***Ott v. Consolidated Freightways Corp., 213 F. Supp. 2d 662, 665 (S.D. Miss. 2002)*** **(Lee, J.)**; *see also, e.g.,* ***McCall v. Scott, 239 F.3d 808, 813 n.2 (6th Cir. 2001)*** (finding that the presence of an unserved forum defendant does not bar removal); ***Test Drilling Serv. Co. v. Hanor Co., 322 F. Supp. 2d. 953, 957 (C.D. Ill. 2004)*** [*8] **(Scott, J.)** (same); ***Stan Winston Creatures, Inc. v. Toys "R" Us, Inc., 314 F. Supp. 2d 177, 180-81 (S.D.N.Y 2003)*** (Lynch, J.) (same); ***Jackson v. Bridgestone/Firestone, Inc. (In re: Bridgestone/Firestone, Inc., Tires Products Liability Litigation), 184 F. Supp. 2d 826, 828 (S.D. Ind. 2002)*** (Baker, J.) (same); ***Wensil v. E.I. Dupont De Nemours & Co., 792 F. Supp. 447, 449 (D.S.C. 1992)*** (Shedd, J.) (same); ***Republic West. Ins. Co. v. International Ins. Co., 765 F. Supp. 628, 629 (N.D. Cal. 1991)*** (Ware, J.) (same); 7 Charles Alan Wright, Arthur R. Miller & Edward H. Cooper, *Federal Practice and Procedure* § 3723 ("[A] resident defendant who has not been served may be ignored in determining removability."). This Court agrees. The presence of two unserved resident Defendants in this case does not prohibit removal. [6]

> 6 Plaintiff, in opposition, argues that "a majority" of courts to consider this issue have found that the presence of an unserved forum defendant defeats removal. While that was the position taken by a district court in ***Oxendine v. Merck & Co., 236 F. Supp. 2d 517, 524 (D. Md. 2002)*** (Davis, J.), one of the few cases to side with Plaintiff, it does not appear to be correct. *See, e.g.,* 7 Charles Alan Wright, Arthur R. Miller & Edward H. Cooper, *Federal Practice and Procedure* § 3723 (stating the general rule that unserved forum defendants may be ignored).

**[*9] C. Policy Considerations**

Both of Plaintiff's primary arguments disposed of, one final question remains. Though, as noted above, several courts have been confronted with circumstances in which either a defendant seeks to remove prior to having been served, or a defendant in a diversity case seeks to remove when an unserved resident defendant is present, this Court is aware of few courts to consider these facts in concert. That is, while courts have routinely explored the separate questions of whether removal is proper prior to service, and whether removal is appropriate in diversity cases with an unserved resident defendant, rarely have they considered the implications of removal in a diversity case where both a resident defendant is present and removal takes place before any party is served. Those are the current facts.

Recently, however, a district court in the Northern District of Illinois was confronted with just such a case. There, in ***Holmstrom v. Harad, No. 05-C-2714, 2005 U.S. Dist. LEXIS 16694, 2005 WL 1950672 (N.D. Ill. Aug. 11, 2005)*** **(Aspen, J.)**, the court found that while the presence of an unserved resident defendant normally does not defeat [*10] removal, that fact, when coupled with the fact that the removing defendant itself had not itself been served, was sufficient to warrant remand. ***Holmstrom, 2005 U.S. Dist. LEXIS 16694, at *3-8.*** The district court, in other words, carved out a limited exception to the rule that an unserved resident defendant does not defeat removal in diversity cases, for precisely the instant facts -- where *no* defendant has been served as of removal. At least one other district court has reached an identical conclusion. *See* ***Recognition Comm., Inc. v. American Auto. Ass'n, No. 97-CV-0945, 1998 U.S. Dist. LEXIS 3010, 1998 WL 119528 (N.D. Tex. March 5, 1998)*** **(Solis, J.)**.

Respectfully, this Court must disagree. While an argument can be made that the likely policy underlying the "joined-and-served" requirement is not implicated by the current facts, [7] the Court is constrained by the language of ***28 U.S.C. § 1441.*** That language is clear and unambiguous: where complete diversity is present -- as it is in this case -- only the presence of a "joined-and-served" resident defendant defeats removal. ***28 U.S.C. § 1441(b).*** [*11] Here, no such defendant was present when this case was removed. The statute contains no proviso, and, given its clarity, it is not this Court's role to insert one. *See* ***Connecticut Nat'l Bank v. Germain, 503 U.S. 249, 253-54, 112 S. Ct. 1146, 117 L. Ed. 2d 391 (1992).*** Nor is it this Court's place to require, contrary to at least the language of ***28 U.S.C. § 1446(b)***, that a defendant be served prior to removal. ***Id.*** Instead, this Court must be

faithful to the language Congress actually employed. In this instance, that language provides no basis for remand.

7 The ***Holmstrom*** court determined that the policy behind the joined-and-served requirement is that a plaintiff should not be allowed to avoid federal diversity jurisdiction simply by suing a token resident defendant who she never intends to actually serve. Because that policy is only implicated in situations where nonresident defendants, but not resident defendants, have been served, the court's argument continues, it is not at issue when no party has received service (as was the case in ***Holmstrom*** and is the case here). ***Holmstrom, 2005 U.S. Dist. LEXIS 16694, at *5-7.*** *See also* ***Stan Winston Creatures, 314 F. Supp. 2d at 181.***

[*12] **IV. Conclusion**

Accordingly, for the reasons set forth above, the Court **DENIES** Plaintiff's motion to remand. (Doc. 12.)

**IT IS SO ORDERED.**

Signed this 16th day of February, 2006.

/s/ David RHerndon

**United States District Judge**